77 N.J. Super. 397 (1962)
186 A.2d 536
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH WILLIAM MAXEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Union County Court, Law Division  Criminal.
Decided November 21, 1962.
*398 Mr. John J. Dugan for the State (Mr. H. Douglas Stine, Prosecutor).
Mr. Stanley Tannenbaum for the defendant (Messrs. Reibel, Isaac & Tannenbaum, attorneys).

THE ISSUE
FULOP, J.C.C.
This is a motion for correction of an allegedly illegal sentence.
On October 27, 1961 defendant was convicted by a jury of two counts of murder in the first degree. On each count the jury recommended life imprisonment.
One murder of which defendant was convicted involved the killing of a woman by knocking her to the ground and running a heavy automobile back and forth over her body. The other murder occurred some minutes later when defendant strangled another woman with a man's trouser belt. Thus there were two distinct acts of killing, by different methods, separated by some period of time.
*399 On October 30, 1961 I sentenced defendant to imprisonment for life on each count in accordance with the jury verdict. As part of the sentence I ordered that the sentence on the second count be served consecutively to that on the first count.
Defendant contends that the imposition of consecutive or cumulative terms of imprisonment was illegal. This is the issue to be decided.
Since this motion was not made within 60 days from the date of the judgment of conviction, the exercise of discretion in imposing the sentences cannot be revised. R.R. 3:7-13(a) provides:

"3:7-13. Correction or Reduction of Sentence.

(a) The court may correct an illegal sentence at any time. The court may reduce or change a sentence within 60 days from the date of the judgment of conviction, or, if an appeal is taken within the 60 days, within 10 days of the issuance of the mandate by the appellate court."
Therefore, I shall not deal with the reasons for the imposition of the sentence, but only with the legality thereof.

THE FORM OF THE SENTENCE
The oral imposition of sentence appears at page 3205 of the transcript and reads in part as follows:
"On Indictment No. 275, the May Session, 1960 Term, Count 1, Joseph William Maxey, you are sentenced to imprisonment in the State Prison for the remainder of your natural life. Credit for time served in jail is 157 days * * *.
On Count 2 of the same indictment, Joseph William Maxey, you are sentenced to imprisonment in the State Prison for the remainder of your natural life and insofar as possible this sentence shall be consecutive to the sentence on Count 1."
The judgment of conviction signed on the same day, October 30, 1961, reads in part as follows:
"ORDERED AND ADJUDGED that the defendant be and is sentenced on Count #1 to State Prison for the remainder of his natural life, credit for 157 days spent in jail. Sentence on Count #2 *400 to State Prison for the remainder of his natural life. Sentence to run consecutively with Count #1."
It is argued that the sentence was uncertain in the oral delivery because it contained the words "insofar as possible." I see no lack of clarity or certainty. No one could misunderstand. See State v. Pohlabel, 40 N.J. Super. 416 (App. Div. 1956), for general discussion.

THE POWER TO PROVIDE THAT SENTENCES BE SERVED CONSECUTIVELY
N.J.S. 2A:113-4 provides in part as follows:
"Every person convicted of murder in the first degree, his aiders, abettors, counselors and procurers, shall suffer death unless the jury shall by its verdict, and as a part thereof, upon and after the consideration of all the evidence, recommend life imprisonment, in which case this and no greater punishment shall be imposed."
Able counsel for defendant contends that this statute deprives the court of all power to deal with the sentence since it leaves no discretion as to penalty, citing State v. Hipplewith, 33 N.J. 300 (1960), in which the court said:
"But in New Jersey the jury is directed by statute to determine appropriate punishment in first degree murder cases." (at p. 319)
There is no doubt that the jury determines the penalty on each conviction of murder in the first degree. But someone must have the authority to determine the interrelationship between two or more sentences, as, for instance, when the convictions are in separate trials. This power is placed in the hands of the sentencing judge.
In the leading case of State v. Mahaney, 73 N.J.L. 53 (Sup. Ct. 1905), affirmed 74 N.J.L. 849 (E. & A. 1907), the Supreme Court said:
"* * * This right to impose consecutive sentences, which had its origin before the American Revolution, is one well recognized in common law. * * *
*401 * * * The doctrine is one resting in common sense, as well as in authority. It is apparent that, unless consecutive sentences can be imposed, the court must either suspend sentence for one offence until the expiration of the time of imprisonment named in the other sentence, at which time the personnel of the court and of the prosecutor's office may have changed, and the facts essential to the imposition of a sentence become difficult of ascertainment, or else the court must impose concurrent sentences, the effect of which is to entirely nullify the effect of one of them.
For these reasons the great weight of authority in this country is that, without any statutory provision for consecutive sentences, the power to impose them resides in the court. * * *
* * * The practice of imposing consecutive sentences has, so far as I am aware, been followed in this state during the entire period of its existence as a state. * * *" (at pp. 55-56)
Accord: Rex v. Wilkes, 4 Burrows 2578, 86 Eng. Rep. (Repr.) 327, 355 (1769); Howard v. United States, 75 F. 986, 34 A.L.R. 509 (6 Cir. 1896).
In 2 Hale Pleas of the Crown (1st Am. ed. 1847; Notes by Stokes and Ingersoll), 391, it is said:
"Where one already under sentence of imprisonment is convicted of a new offence, the court may pass a second sentence on him to take effect after the expiration of the first, R. v. Wilkes, Burr. 2577; R. v. Williams, 1 Leach 536."
In 1 Chitty Criminal Law 718 (1847), it is said:
"So where he is charged with several offenses at the same time, of the same kind, he may be sentenced to several terms of imprisonment, one after the conclusion of the other."
See also 2 Bishop's New Criminal Procedure, § 1327, at p. 1152 (1913).
In 5 Wharton's Criminal Law and Procedure, § 2214, p. 430 (1957), it is said:
"The court has inherent power, however, to impose cumulative sentences upon conviction under separate indictments for separate offenses, the imprisonment under one to commence at the termination of that under the other. A sentence to imprisonment may be imposed to take effect upon the expiration of another term of imprisonment imposed upon conviction under another indictment. So the *402 court has the power to impose such sentences upon conviction of several separate offenses included in one indictment."
The argument is advanced that the Legislature intended to prohibit consecutive life sentences because it failed to provide for parole eligibility in such cases. The statutory sections cited are N.J.S.A. 30:4-123.10 and 30:4-123.11. They generally provide minimum eligibility periods, limiting rather than granting the power to parole. The power to grant parole is contained in N.J.S.A. 30:4-123.5 and applies to "persons now or hereafter serving sentences having fixed minimum and maximum terms or serving sentences for life * * *."
The statute referred to deals with the powers and duties of the Parole Board. It does not deal with the powers or duties of the court. I can see no warrant for any inference from the failure to mention consecutive life sentences except that the draftsmen either did not think of them or thought they were covered sufficiently, as suggested by counsel.
In the course of the argument on this point defendant's attorney says: "It is reasonable and logical, however, to believe that the legislative intent was that section 30:4-123.11 governs and persons are eligible for parole after twenty-five years of imprisonment regardless of how many life sentences there are." If so, then defendant is obviously unaffected by the consecutive life sentences. Of this, more hereafter.

IMPOSSIBILITY
It is argued that two consecutive sentences to imprisonment for life are physically impossible to execute, that the law does not pronounce impossible judgments, and the sentences are therefore illegal.
A sentence of imprisonment for life does not mean that the defendant must remain in prison for his natural life. 24B C.J.S. Criminal Law § 1995(3), p. 640; State v. Collins, 50 Wash.2d 740, 314 P.2d 660 (Sup. Ct. 1957). In State v. White 27 N.J. 158 (1958), Mr. Justice Wachenfeld, in a dissenting opinion, said:
*403 "Those in authority know that a life sentence in the average case is actually a term of approximately 14 to 15 years, and why the jury, which pronounces the punishment, should not be so informed and take it into consideration is beyond my comprehension. Life imprisonment is a false designation and the jury is entitled to know its true meaning. The public is already painfully aware of it." (at p. 191)
No reported decision directly in point has been found in this State.
In 5 Wharton's Criminal Law and Procedure, § 2215, p. 432 (1957), it is said:
"The fact that a sentence is more than a person's lifetime, as 199 years, does not in itself affect its validity, since the right to impose such a sentence is well established."
Sentences of imprisonment for periods of 99 years and 199 years were sustained in U.S. ex rel. Bongiorno v. Ragen, 146 F.2d 349 (7 Cir. 1945), cert. den. 325 U.S. 865, 65 S.Ct. 1194, 89 L.Ed. 1985 (1945); People v. Hetherington, 379 Ill. 71, 39 N.E.2d 361 (Sup. Ct. 1942); People v. Pace, 362 Ill. 224, 198 N.E. 319 (Sup. Ct. 1935); People v. Rucker, 364 Ill. 371, 4 N.E.2d 492 (Sup. Ct. 1936).
In People v. Pace, supra, the Illinois Supreme Court observed:
"[1] It is the defendant's major premise that we should take judicial notice that no one, no matter of what age or condition of health, could live to serve this sentence, and that in so far as it exceeds his lifetime it is necessarily void because impossible of execution. From this premise he proceeds to urge that the court and jury sought to, and if the judgment stands actually did, evade the provisions of the Parole Law.
It must first be observed that any sentence, no matter how short, may eventually extend beyond the life of the prisoner. Any sentence for a term of years is necessarily conditioned upon the prisoner living out the term, and we fail to see wherein he can be either interested in or prejudiced by an excess number of years which he cannot serve nor the people exact. The jury evidently intended to permanently remove this defendant from society without exacting his life, and we hold that in so doing they were within the statutory provision that whosoever is guilty of murder shall suffer the punishment *404 of death, or imprisonment in the penitentiary for his natural life, or for a term not less than fourteen years. * * *
[2] The Parole Law has nothing to do with this case, and we are not presently concerned with any question as to whether or not an effort has been made to circumvent it. * * *
* * * When the defendant has been denied some right which he claims under the Parole Law, will be a suitable time for deciding such questions as he may then raise." (198 N.E., at p. 320)
Successive life sentences were approved by the Utah Supreme Court in McCoy v. Severson, 118 Utah 502, 222 P.2d 1058 (1950), and by the California Supreme Court in Ex parte Pedrini, 33 Cal.2d 876, 206 P.2d 699 (1949). The California law has since been changed by statute.
In Ex parte Pedrini, the California Supreme Court said:
"* * * petitioner urges us to declare as law of the state, * * * that once a defendant is sentenced to life imprisonment he is immune from punishment for a further crime unless that crime is one for which sentence of death is imposed. To illustrate: A defendant sentenced to life imprisonment for murder of the first degree and paroled after the expiration of seven years may commit as many robberies, burglaries, and rapes as he has opportunity to commit; his parole, granted by the Adult Authority as an act of grace, can be revoked by that agency, but nothing can be done by the courts by way of punishing him for his depredations committed while he was on parole because sentences therefor merge in the previous life sentence. Such a result, in our opinion, should be permitted to occur only where the law as enacted is so clear and specific in its terms as to admit of no other interpretation * * *." (206 P.2d, at p. 704)
In People v. Murray, 72 Mich. 10, 40 N.W. 29 (Sup. Ct. 1888), it was held that a sentence of imprisonment for years should not exceed the defendant's life expectancy. However, it was treated as a matter of discretion and not a question of legal power. The case does not appear to have been widely followed.
There appears to be no authority for the proposition that a sentence for more than a defendant's natural life is illegal for impossibility. In view of the parole provisions referred to, it is not impossible to serve the sentence.
*405 Although no reported case in New Jersey has been found, lawyers and judges remember that consecutive sentences of life imprisonment have been imposed. Apparently they were never questioned on appeal.
According to newspaper accounts in the current case of State v. Vance in Morris County, the defendant pleaded non vult to two murders. Under N.J.S. 2A:113-3, "the sentence to be imposed, if such plea be accepted, shall be either imprisonment for life or the same as that imposed upon a conviction of murder in the second degree." Under N.J.S. 2A:113-4 the penalty for murder in the second degree is imprisonment for not more than 30 years. Judge Stanton sentenced to a minimum of 25 and maximum of 30 years on the first count, and consecutively to life imprisonment on the second count. The sentences are clearly provided for in the statute. Yet, on the theory here advanced, it is an impossible sentence. The defendant cannot serve longer than life.
Surely, the Legislature did not intend to allow a greater sentence to be imposed upon one who pleads non vult than upon one who is tried and convicted of first degree murder.
In State v. Fitzsimmons, 60 N.J. Super. 230 (Cty. Ct. 1960), Judge Pashman determined that a defendant may be prosecuted for a separate robbery after conviction of murder and sentence to life imprisonment. Obviously, if no more penalty can be imposed, there would be little point to a further prosecution.
I note the learned and thoughtful opinion of Judge Gaulkin in State v. Johnson, 67 N.J. Super. 414 (App. Div. 1961). In that case long consecutive sentences of imprisonment for kidnapping and rape were revised on appeal to concurrent sentences. The case deals with the exercise of discretion, not with the legality of the sentences. The rationale is made clear by the following excerpt:
"* * * when more than one statute is violated, courts should consider the social norms intended to be vindicated by the several statutory provisions, and, when all of the facts that constitute all of the crimes charged in reality constitute only a single episode and *406 violate only a single one of those norms, consecutive sentences should not ordinarily be imposed, particularly when the number of charges is the result of the prosecution's optional choice of statutes and counts, which made several offenses out of a single transgression. * * * (at p. 424)
The present case is not one in which the same transgression was prosecuted under various headings. Here there was evidence of attempted rape, kidnapping, robbery, larceny. Properly, the only charge made was murder. But there were two separate and distinct murders. Although closely connected in time, the acts of killing were as distinct as though separated by years.

THE EFFECT OF THE SENTENCE ON DEFENDANT'S PAROLE
It is strongly argued that the court may not consider the effect of its sentence upon the date of eligibility for parole, because parole is an executive and not a judicial function and the court may not frustrate the statutory scheme for parole.
That the court may not frustrate the statutory scheme for parole is undoubtedly correct. It is also correct that parole is an executive function and not a judicial one. However, it does not follow that a court may not consider the minimum statutory periods of eligibility for parole in imposing sentence.
It is clear that the Legislature did not entrust absolute discretion to the Parole Board as to the length of time that a defendant should remain incarcerated. It provided minimum periods before a prisoner may be released. In so far as the sentence determines parole eligibility, it is the duty of the court to consider that eligibility in fixing the sentence.
If the court has the power to determine whether or not the sentences in this case should be served consecutively or concurrently, then it has the right and duty to consider the actual operation of the sentences. By so doing the court has not circumvented *407 or defeated the parole law nor attempted to exercise or limit the exercise of the executive parole power.
If, under the parole law, consecutive life sentences require the defendant's incarceration for two consecutive minimum periods before he may become eligible for parole, then the parole law is being applied rather than defeated.
On the other hand, if the parole law intends that every prisoner shall be eligible for parole in 25 years, less commutation time for good behavior and time credits earned and allowed by reason of diligent application to work assignments, regardless of the number and length of consecutive sentences, as defendant argues, then he will be so eligible and the sentence of the court has neither circumvented nor altered the application of the parole law.
The defendant's rights under the parole law must first be determined by the Parole Board. If the law is incorrectly applied, he may apply to the appropriate court for relief. This court has no power in the matter. Ex parte Mahoney, 17 N.J. Super. 99 (Cty. Ct. 1951).
To avoid any suggestion of disingenuousness, it should be candidly stated that the intent of the sentences was to render defendant ineligible for parole until the expiration of two minimum statutory periods if the law permits. The sentences were so imposed to carry out as nearly as the law permits the plain intention of the jury that, although defendant's life should be spared, he should be kept in confinement under guard for the remainder of his life to protect the public against a recurrence of the brutal violence which the defendant has demonstrated. This is a legitimate aim of a criminal sentence. State v. Ivan, 33 N.J. 197 (1960); Model Penal Code (1962), § 1.02(2) (a).
It is interesting to note that under the 1957 British statute repealing capital punishment for some types of murder, the death penalty is mandatory upon conviction of a second murder, whether the convictions be at the same time on both or at separate times.

*408 CONCLUSION
It is concluded that the court had the legal authority to provide that the two sentences to life imprisonment be served consecutively, that it did so provide in clear terms, and that the sentence complained of was legal. The motion is therefore denied.
The prosecutor is directed to submit an order in conformity herewith.
Assigned counsel for defendant is advised to take steps for the review of this determination by the Supreme Court immediately upon entry of the order unless expressly otherwise directed by the defendant in writing.
Both counsel are commended for the able and diligent presentation of the matter.