STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
JOSEPH WILLIAM MAXEY, DEFENDANT-APPELLANT.

Argued December 17, 1963—Decided March 16, 1964.

*Mr. Ralph DeVita,* First Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. H. Douglas Stine,* Union County Prosecutor, attorney).

*Mr. Stanley Tannenbaum* argued the cause for defendant-appellant.

The opinion of the court was delivered by

HANEMAN, J. The appeal herein concerns the denial by the Union County Court of defendant's motion for correction of an allegedly illegal sentence.

Defendant was indicted on two counts of murder. Each of the two counts concerned a separate and distinct homicide. In that connection the County Court stated:

"One murder  *  *  *  involved the killing of a woman by knocking her to the ground and running a heavy automobile back and forth over her body. The other murder occurred some minutes later when defendant strangled another woman with a man's trouser belt. Thus there were two distinct acts of killing, by different methods, separated by some period of time." *State v. Maxey,* 77 *N. J. Super.* 397 (*Cty. Ct.* 1962).

On each count the trial jury found the defendant guilty of first degree murder and recommended life imprisonment.

At the time of sentence the judge stated:

"On Indictment No. 275, the May Session, 1960 Term, Count 1, Joseph William Maxey, you are sentenced to imprisonment in the State Prison for the remainder of your natural life. Credit for time served in jail is 157 days * * *.

On Count 2 of the same indictment, Joseph William Maxey, you are sentenced to imprisonment in the State Prison for the remainder of your natural life and insofar as possible this sentence shall be consecutive to the sentence on Count 1."

The judgment of conviction reads:

"ORDERED AND ADJUDGED that the defendant be and he is sentenced on Count No. 1 to State Prison for the remainder of his natural life, credit for 157 days spent in jail. Sentence on Count No. 2 to State Prison for the remainder of his natural life. Sentence to run consecutively with Count No. 1."

Defendant moved before the County Court for a correction of the sentence. He sought thereby to eliminate the provision for consecutive sentences, on the ground that the court was without power to impose successive life sentences. The motion was denied, *State v. Maxey, supra*. Defendant appeals directly to this court under *R. R.* 1:2–1(c).

Defendant reasons that a life sentence leaves no time in which to serve other sentences consecutive to it and that consecutive life sentences are therefore illegal. He also urges that the delegation of sentencing discretion in a first degree murder case is vested solely in the jury and that the judge exercises only the function of imposing the sentence as directed by the verdict of the jury. It follows, he says, that the judge is without power to append to a jury verdict, which recommends life imprisonment for each of two murders, a provision making one of the sentences of life imprisonment consecutive to the other.

The judicial power to impose consecutive sentences in this State is not founded upon statute but rather upon our common law, derived from the common law of England.

*State v. Mahaney,* 73 *N. J. L.* 53 (*Sup. Ct.* 1905), affirmed 74 *N. J. L.* 849 (*E. & A.* 1907).

In England, prior to the American Revolution, the judge's power to impose successive sentences was limited to misdemeanors, for the conviction of which crimes the sentence rested in the judicial discretion. *Rex v. Wilkes,* 4 *Burr* 2527, 2577, 19 *How. St. Tr.* 1133, 1134 (*K. B.* 1770). The judge had no such power in imposing sentences for the commission of felonies because the mandatory penalty for felonies was death, and there was, therefore, no rational point, once having sentenced a man to death, to direct that he be hanged a second time. *Rex v. Albury,* 1 *K. B.* 680 (1951).[1] The misdemeanor-felony distinction is inapplicable in New Jersey where crimes, if categorized at all, are designated high misdemeanors or misdemeanors, *Jackson v. State,* 49 *N. J. L.* 252 (*Sup. Ct.* 1887), affirmed 50 *N. J. L.* 175 (*E. & A.* 1887), *Brown v. State,* 62 *N. J. L.* 666 (*E. & A.* 1898); *State v. Wilson,* 79 *N. J. L.* 241 (*Sup. Ct.* 1910), affirmed 80 *N. J. L.* 467 (*E. & A.* 1910), none of which carry a mandatory death penalty. The reason which undergirded the English common law prohibition against the imposition of consecutive sentences for the commission of felonies becomes meaningless when applied to our crimes which provide penalties by imprisonment for terms of years.

As far as is ascertainable, *State v. Mahaney, supra,* represents the only instance where the inherent power of the courts to impose successive sentences for the commission of any of our statutory crimes punishable by imprisonment for a term of years, was questioned. And *Mahaney* vigorously rejected the attack on such power, recognizing that the doctrine rested on common sense as well as authority, and had

---

[1] Although this was not literally true, as there were some few felonies which were not so punishable, the penalty for felonies, with the passage of years, became to be generally so regarded. 4 *Blackstone's Commentaries on the Laws of England* 97 (1809), 1 *Wharton's Criminal Law and Procedure* 58 (*Anderson* 1957). This bar against consecutive felony sentences was eventually eliminated in England by the Criminal Act, 1827, § 10.

been followed in this State since its birth. *Mahaney, supra,* 73 *N. J. L.,* at *p.* 56. Consequently, our courts have the discretion and power to impose consecutive sentences for terms of years. *State v. Mahaney, supra,* at *p.* 55.

If a life sentence meant that a man *must be imprisoned for life* we might find merit in defendant's argument which echoes that employed against successive sentences for felonies punishable by death, *i. e.,* a man has but one life and it would be an anomaly to commit him for two successive lives.

But realistically a "life sentence" is not what the words connote. The responsibility to determine in the first instance whether punishment for first degree murder shall be life imprisonment or death is vested in the jury. The Legislature, however, has placed the responsibility of deciding how a life sentence shall be executed in the Parole Board. *State v. White,* 27 *N. J.* 158, 177 (1958). Because *N. J. S. A.* 30:4–123.11 provides:

"Any prisoner serving a sentence of life shall be eligible for consideration for release on parole after having served twenty-five years of his sentence, less commutation time for good behavior and time credits earned and allowed by reason of diligent application to work assignments,"

a prisoner sentenced to life imprisonment and receiving maximum commutation time credit, is eligible for and may be paroled in approximately 14 years. See Wachenfeld, J. dissenting in *State v. White,* 27 *N. J.,* at *p.* 191 (1958). The practical result is that a single life sentence is modified into an indeterminate sentence with a possible minimum of approximately 14 years and a maximum of life.

Under the original 1948 parole statute, *L.* 1948, *c.* 84, *N. J. S. A.* 30:4–123.1 *et seq.,* where a prisoner was serving consecutive sentences, he was eligible for parole consideration upon the expiration of the minimum of his first sentence. If parole were then granted, he was not released from prison but was deemed to have commenced service of his second sentence simultaneously with the service of the balance of the maximum of his first sentence. He then had the

dual status of a "cell parolee" on his first sentence and a prisoner serving time on his second sentence. See *In re Fitzpatrick,* 9 *N. J. Super.* 511 (*Cty. Ct.* 1950), affirmed 14 *N. J. Super.* 213 (*App. Div.* 1951), approved in *In re Domako,* 9 *N. J.* 443, 444 (1952), *cert.* denied 343 *U. S.* 987, 72 *S. Ct.* 1085, 96 *L. Ed.* 1374 (1952). Subsequent statutory amendments which permitted aggregation of the minima of consecutive sentences for determination of eligibility for parole dealt only with sentences involving terms of years, leaving untouched the application of the above outlined procedures to consecutive life sentences. Thus it is not legally impossible for a prisoner to serve "life sentences" consecutively and we find no merit to defendant's contentions on that point. See *Ex Parte Pedrini,* 33 *Cal. 2d* 876, 206 *P. 2d* 699 (*Sup. Ct.* 1949), *McCoy v. Severson,* 118 *Utah* 502, 222 *P. 2d* 1058 (*Sup. Ct.* 1950), *People v. Kostal,* 159 *Cal. App. 2d* 444, 323 *P. 2d* 1020 (*D. Ct. App.* 1958).

■■ We now proceed to defendant's second point. It must be conceded that in a case involving one instance of first degree murder the jurors determine whether the defendant shall be sentenced to life or to capital punishment, and the judge performs only the function of pronouncing that sentence and entering judgment. See *In re Ernst,* 37 *N. J.* 24 (1962). It is also true that in their deliberations as to whether a defendant shall suffer capital punishment or life imprisonment, the jury is required to conceive of life imprisonment as imprisonment for life and must ignore the possibility that the defendant may be paroled if a life sentence is imposed upon him. *State v. White,* 27 *N. J.* 158 (1958). The reason for this is obvious. Since the jury must make the basic decision as to whether the defendant lives or dies, it is felt that the defendant should not be prejudiced by the jury's regarding the alternative to death to be something less than life imprisonment. *State v. White, supra,* at *p.* 177. None of this is to say, however, that a judge, where life imprisonment has been recommended by the jury for each of two distinct homicides, is without power to direct that the terms

shall be served consecutively, thereby affecting the length of time the prisoner must remain in prison before he may be released on parole. Rather, this means that the court may not deviate from the jury's direction as to the nature of punishment for each conviction.

As above noted, in cases where a defendant is convicted of several offenses punishable by terms of years the judge has the power to decide whether to impose consecutive sentences. The power of the court to make such sentences cumulative exists from necessity; for, otherwise, a person might be convicted at the same term of court for several distinct offenses and the court have power to inflict punishment for only one. See *State v. Mahaney, supra,* 15 *Am. Jur., Criminal Law,* § 464.

The purposes of sanctions in the criminal process are fourfold: retribution, deterrence, restraint, and rehabilitation. *Commonwealth v. Elliott,* 371 *Pa.* 70, 89 *A. 2d* 782 (*Sup. Ct.* 1952). Although he is advised to take all four purposes into account when imposing sentence, the sentencing judge, because of his temporal location in the correctional process, is mainly concerned with the first two elements, namely, vindication of the wrong to society, and deterrence of others from committing similar criminal offenses. This is not to say that in the imposition of sentence, the judge is not to give consideration to restraint and rehabilitation. Under our present rules, the presentence report ranges over the prisoner's entire life and appraises it against his criminal offense as an aid to the judge in making the punishment fit the offender as well as the crime. This adjustment necessarily takes into account the factors of restraint and rehabilitation. Because only the passage of time in prison can reveal whether a particular prisoner has become rehabilitated or whether his return to society is a risk worth taking, the parole board is particularly well situated to make those determinations, although it too considers all four elements.

The necessary effect of the imposition of consecutive instead of concurrent sentences is that the prisoner's time for

eligibility for street parole will be lengthened. (*N. J. S. A.* 30:4–123.10.) The only limitation upon the judge's power to affect the commencement of the prisoner's eligibility for parole is a statutory direction to the Parole Board that a prisoner serving consecutive sentences of terms of years shall be considered eligible for such parole no later than if he were serving a life sentence. *N. J. S. A.* 30:4–123.10.

By gearing a prisoner's eligibility for parole to the length and number of consecutive sentences imposed by the trial judge, the Legislature has recognized the role played by the trial judge in administering the penal laws of this State. The Legislature has thus left remaining in the judiciary the power and duty of establishing the minimum time that a defendant must spend in prison before the Parole Board can consider him eligible for release on parole, subject, of course, to the above limitations of *N. J. S. A.* 30:4–123.10.

In the case at bar the trial judge registered natural abhorrence at the heinousness of the murders committed by defendant. His purpose, and the effect of his sentence, was to say that for the purpose of punishing defendant and deterring others defendant should for each murder remain in prison for the minimum statutory time allowed for each sentence. We conceive of no reason why a man who has been found guilty of two murders should necessarily receive the benefit of the same parole eligibility as a man who has committed only one murder, when a man who had committed two lesser crimes would not necessarily receive the same parole eligibility as if he had committed only one.

In the absence of a statute expressly prohibiting the sentencing judge from exercising such discretion, we find that the power to impose consecutive life sentences resides in the trial judge.

■ But, says defendant, the imposition of consecutive life sentences is repugnant to the legislative policy, demonstrated by the Parole Act. In support of this position defendant cites *N. J. S. A.* 30:4–123.10, which now provides:

"Whenever, after the effective date of this act, 2 or more sentences to run consecutively are imposed at the same time by any court of this State upon any person convicted of crime herein, there shall be deemed to be imposed upon such person a sentence the minimum of which shall be the total of the minimum limits of the several sentences so imposed, and the maximum of which shall be the total of the maximum limits of such sentences. For purposes of determining the date upon which such a person shall be eligible for consideration for release on parole, the board shall consider the minimum sentence of such person to be the total aggregate of all the minimum limits of such consecutive sentences and the maximum sentence of such person to be the total aggregate of all the maximum limits of such consecutive sentences.

\*        \*        \*        \*        \*        \*        \*        \*

Notwithstanding any of the other provisions of this act, whenever it shall appear that the date upon which a prisoner shall be eligible for consideration for release on parole occurs later than the date upon which he would be so eligible if a life sentence had been imposed upon him, then, and in such case, he shall be deemed eligible for consideration for release on parole after having served 25 years of his sentence, or sentences, less commutation time for good behavior and time credits earned and allowed by reason of diligent application to work assignments."

and *N. J. S. A.* 30:4–123.11, which provides:

"Any prisoner serving a sentence of life shall be eligible for consideration for release on parole after having served twenty-five years of his sentence, less commutation time for good behavior and time credits earned and allowed by reason of diligent application to work assignments." (Emphasis supplied)

He reasons that *section* 10 was intended to insure that all prisoners serving consecutive sentences for terms less than life should be eligible for parole no later than if *"a* life sentence had been imposed upon him," and that since no mention is made in *section* 11 or elsewhere in the statute of more than *one* life sentence, it must be concluded that the Legislature intended that no prisoner should have to stay in prison more than 25 years before he can become eligible for release on parole. It follows, he says, that the imposition of consecutive life sentences on him would frustrate this legislative intent because it would extend his period of parole non-eligibility beyond 25 years.

This argument calls for a construction of the Parole Act. When the Parole Act was adopted in 1948, *L.* 1948, *c.* 84, *sections* 10 and 11 read as follows:

"10. No inmate of a penal or correctional institution serving a sentence for a fixed minimum and maximum term shall be eligible for consideration for release on parole until he has served his minimum sentence, less commutation time therefrom for good behavior and for diligent application to work assignments or one-third of his fixed maximum sentence (without regard to commutation time), whichever occurs sooner, subject to the provisions of section 12 [*N. J. S. A.* 30:4–123.12] hereof.

"11. Any prisoner serving *a* sentence of life shall be eligible for consideration for release on parole after having served twenty-five years of his sentence, less commutation time for good behavior and time credits earned and allowed by reason of diligent application to work assignments." (Emphasis supplied)

That original enactment made no provision for determining the parole eligibility of a prisoner serving consecutive sentences. The proper procedure, as first declared in *In re Fitzpatrick, supra,* was to grant successive "cell paroles," if warranted, until the successive minimum terms were served. Thus, final release from prison could not be attained until the aggregate of the minimum sentences less credits had been served.

*L.* 1950, *c.* 292 amended *section* 10 by the addition of a paragraph which reads:

"Whenever, after the effective date of this act, two or more sentences to run consecutively are imposed at the same time by any court of this State upon any person convicted of crime herein, there shall be deemed to be imposed upon such person a sentence the minimum of which shall be the total of the minimum limits of the several sentences so imposed, and the maximum of which shall be the total of the maximum limits of such sentences. For purposes of determining the date upon which such a person shall be eligible for consideration for release on parole, the board shall consider the minimum sentence of such person to be the total aggregate of all of the minimum limits of such consecutive sentences and the maximum sentence of such person to be the total aggregate of all of the maximum limits of such consecutive sentences."

The statement of the purpose of this act reads:

"The attorney-general recently declared improper a procedure which has been in existence in New Jersey for a considerable period of time and as a result of which the minimum and maximum limits of a series of consecutive sentences were combined to produce a single aggregate minimum and maximum.

This bill is designed to permit such procedure by legislative enactment and is patterned after the law of the commonwealth of Pennsylvania which was confronted with a similar situation in 1937." (*Senate Bill No. 361*)

By this amendment provision was made for the aggregation of the *minima* of consecutive term sentences "imposed at the same time" to ascertain eligibility for parole consideration. *Section* 11 was in no wise changed.

*L.* 1953, *c.* 277 further amended *section* 10 by the addition of the following:

"With regard to consecutive sentences imposed upon prisoners prior to July third, one thousand nine hundred and fifty, such consecutive sentences, with the consent of the prisoner, may be aggregated by the board to produce a single sentence, the minimum and maximum of which shall consist of the total of the minima and maxima of such consecutive sentences. Such aggregation shall be for the purpose of establishing the date upon which such prisoner shall be eligible for consideration for release on parole.

"When any such prisoner is released on parole the period of his supervision under parole shall be measured by the aggregated maxima of his consecutive sentences.

"Notwithstanding any of the other provisions of this act, whenever it shall appear that the date upon which a prisoner shall be eligible for consideration for release on parole occurs later than the date upon which he would be so eligible if a life sentence had been imposed upon him, then, and in such case, he shall be deemed eligible for consideration for release on parole after having served twenty-five years of his sentence, or sentences, less commutation time for good behavior and time credits earned and allowed by reason of diligent application to work assignments."

The statement of the purposes of this act as far as here material reads:

"The purpose of this act is twofold. First, with respect to the amendment in Section 10, the experience gathered by the State Parole Board indicates that a limited number of prisoners in con-

finement in State Prison have imposed upon them several consecutive sentences, all of long duration, the net effect of which is that these prisoners cannot hope to appear before the Parole Board during their lifetime.

There are sentences recorded with a minimum of 60 to 70 years and a maximum well in excess of 100 years. A prisoner with a minimum of 60 years must serve in excess of 40 years before he can be considered for release on parole. On the other hand, a life sentence prisoner is eligible at the expiration of 25 years of service of sentence less commutation and work time credits. The amendment to Section 10 is designed to give long-term minimum-maximum sentence prisoners eligibility for parole consideration comparable to that afforded life sentence prisoners under the same Parole Law." (*Assembly Bill No.* 364).

By this amendment the combining of consecutive sentences imposed prior to the effective date of *L.* 1950, *c.* 292 was permitted with the permission of the prisoner. Also, provision was made for parole supervision for the period of the aggregated *maxima* of the consecutive sentences. For the first time provision was made for parole eligibility for term sentence prisoners after having served a period of time required for such eligibility by prisoners serving "a life sentence," regardless of the aggregated minima or *maxima* of the term sentences. *Section* 11 again remained unchanged.

*L.* 1956, *c.* 102 amended the first paragraph of *section* 10 to read:

"No inmate of a penal or correctional institution serving a sentence for a fixed minimum and maximum term shall be eligible for consideration for release on parole until he has served his minimum sentence or *1/3 of his fixed maximum sentence*, less, *in each instance*, commutation time therefrom for good behavior and for diligent application to work assignments, whichever occurs sooner, subject to the provisions of section 12 hereof." (Italics designates new matter)

and the third paragraph to read:

"With regard to consecutive sentences imposed upon prisoners prior to July 3, 1950, *and also with regard to consecutive sentences imposed upon prisoners subsequent to July 3, 1950, by different courts at different times, all* such consecutive sentences, with the consent of the prisoner, may be aggregated by the board to produce a single sentence, the minimum and maximum of which shall consist of the total of the

minima and maxima of such consecutive sentences. Such aggregation shall be for the purpose of establishing the date upon which such prisoner shall be eligible for consideration for release on parole." (Italics designates new matter)

The statement of the purposes of this act as far as here material, reads:

"Additionally, it becomes necessary to make provision for aggregation of consecutive sentences imposed upon prisoners after July 3, 1950, to establish an eligibility date for release on parole. In the present law, a procedure is established for aggregating such sentences when imposed by the same court at the same time and when imposed by different courts at different times prior to July 3, 1950, but, through inadvertence, no provision was made for aggregation of consecutive sentences imposed by different courts at different times after July 3, 1950. This has created a situation on minimum and maximum sentences which results in discrimination against prisoners in this category and needlessly complicates the administration of the Prison and Parole Board." (*Assembly Bill No.* 357)

As far as we are here concerned, provision was made for the same treatment of consecutive sentences in terms of fixed minimum and maximum terms of years, no matter whether imposed before or after July 3, 1950. *Section* 11 was again not changed.

The net effect of the foregoing amendments was (1) to provide uniform parole treatment of prisoners subject to consecutive sentences for terms of years, regardless of the time sentences were imposed; (2) to permit aggregation of the *minima* and *maxima* of consecutive sentences for terms of years to determine eligibility for consideration for release on parole and length of parole supervision; (3) to insure that a prisoner serving such consecutive sentences would not become eligible for parole consideration later than if he were serving a life sentence.

On the three occasions that *section* 10 was amended no change was made in *section* 11. The language of the amendments of *section* 10 shows the legislative intention to affect only those prisoners serving sentences for terms of years and not those serving life sentences. This conclusion is strength-

ened by a reading of the purposes appended to each of the bills.

This means that the rule announced in *In re Fitzpatrick, supra,* governing the eligibility of those sentenced to consecutive sentences, remains in force when applied to life sentences. And the power of the court under the 1948 act, by imposition of consecutive sentences to prolong the period until a prisoner could be considered eligible for release from prison on parole was limited by the *Laws of* 1950, *c.* 292 and subsequent amendments only as to consecutive terms of years. That power remained unimpaired as to consecutive life sentences. In actual practice the Parole Board follows this construction of the statutes, and applies the procedure set forth in *In re Fitzpatrick, supra,* to a prisoner who has been sentenced to a life term and a consecutive term of years.

We conclude, therefore, that the Union County Court properly denied defendant's motion.

Affirmed.

HALL, J. (concurring). The majority and dissenting opinions appear to be in essential agreement that there is no common law or direct statutory prohibition against judicial imposition of consecutive life sentences whether such sentencing follows a jury verdict in a single trial for more than one murder, jury verdicts in separate trials or pleas to one or more indictments. I am in complete accord with this proposition.

The minority concludes, nonetheless, that the 25-year (which usually amounts to about 14½ years after deduction of required credits) minimum eligibility provisions in the parole statute, *N. J. S. A.* 30:4–123.10 and 123.11, apply to consecutive sentences where one is for life as well as when all are for terms of years, and thus renders any life sentence consecutive to a previous one for the same period or for any term of years completely illusory and ineffective. While the dissent does not expressly say that by reason thereof the judge loses power to make the sentences cumulative, I take it the

suggestion certainly is that courts should not make vain pronouncements. The majority, on the other hand, finds a legislative intent that the 25-year provision shall not be applicable to any situation where at least one of the consecutive sentences is for life and so that, even if parole eligibility provisions may control sentencing power, there is not even an indirect restraint on the imposition of consecutive life sentences.

Both opinions actually decide a question which is premature and unnecessary to be determined here, *i. e.,* when a prisoner under consecutive life sentences is first *eligible* for parole and *must be considered* by the Parole Board for release. That question is not ripe until this defendant has served 25 years less credits. The issue before us is fully and adequately determined when we say that the imposition by the trial judge of two cumulative sentences for life in this case was not illegal. Moreover, to me, the date for parole eligibility has no more pertinence to the matter of whether a court has the right to impose consecutive life sentences than on the question of whether consecutive terms for years may be validly imposed where the aggregated minimum thereof exceeds 25 years because the last paragraph of *N. J. S. A.* 30:4–123.10 says that every prisoner serving consecutive terms for years shall be eligible for parole consideration at least at the end of that period regardless of the total of his sentences.

In addition, and perhaps more important, it seems to me most unwise to deal at this time with the matter of parole eligibility in the situation before us even for the sake of settling something for the future. This is a sensitive area of public importance and concern where it is the Legislature's province to make the policy judgment, which should be expressed definitely and unambiguously. The fact of the differing views in the court in this case is sufficient evidence that this has not yet occurred. While it is the judicial function to construe and interpret unclear statutes, we should not do so where that is not presently required. For my part, while a plausible argument can be made to support either of the views

expressed in the two opinions, I am not by any means convinced that the Legislature even thought about or intended to cover at all the matter of minimum parole eligibility where the consecutive sentences were each for life or where one was for life and the other or others for terms of years. While it might well be determined as a matter of policy that a man guilty of only one first degree murder ought to be entitled to consideration for release after 25 years less such credits as the statute prescribes, it is not so obvious that it would be felt that a man who has committed more than one premeditated killing or one such murder plus some other offense or offenses serious enough to warrant state prison confinement ought to have the same early consideration for parole. Since the Legislature has not spoken clearly on the subject, even if it intended to speak of it at all, we ought to give the opportunity, now that the question has been broached, for an unambiguous expression before we unnecessarily announce an opinion based on the present form of the statute.

I do, of course, concur in the result reached by the majority and so vote to affirm.

WEINTRAUB, C. J. (dissenting). So far as I know, this is the first case in which consecutive life sentences were imposed.

I am not bothered by the abstract problem of how a man can succeed in serving consecutive life sentences. It can be done under our statutory scheme. The real issue is one of parole eligibility. The majority hold the sentencing judge has the power to control parole eligibility by deciding whether the subsequent life sentence shall be served with the earlier one or after it. With this I am unable to agree.

As to murder in the first degree, the statute seemingly transferred the entire sentencing responsibility to the jury. *N. J. S.* 2A:113–4 provides that "Every person convicted of murder in the first degree * * * shall suffer death unless the jury shall * * * recommend life imprisonment, in which case this and no greater punishment shall be imposed." The statute neither recognizes nor grants a discretionary role to

the sentencing judge to alter the consequences of the recommendation. The trial judge said "The sentences were so imposed to carry out as nearly as the law permits the plain intention of the jury that, although defendant's life should be spared, he should be kept in confinement under guard for the remainder of his life to protect the public against a recurrence of the brutal violence which the defendant has demonstrated." *State v. Maxey,* 77 *N. J. Super.* 397, 407 (*Cty. Ct.* 1962). No such purpose was expressly stated by the jury, and if the trial judge was merely executing the will of the jury, it could only be on the hypothesis that every recommendation for life imprisonment necessarily imports a decision that the sentence shall be consecutive to all other sentences which have been or can be imposed, to the end that parole eligibility shall be delayed as long as possible. In fact, the statute does not authorize the jury to consider the subject at all.

Although I have stressed the lack of authority in the court to qualify or supplement the jury's recommendation, the case ought not to be decided on that narrow ground. The reason is that a court may impose a life sentence upon a plea of *non vult* or *nolo contendere* to an indictment for murder, *N. J. S.* 2A:113-3, and it would not make sense to differentiate multiple life sentences imposed upon such pleas from those imposed upon jury verdicts. As already said, parole eligibility is really the only meaningful issue, and as to it, I think the Legislature has fixed a *minimum date of eligibility* which controls whether life sentences be deemed concurrent or consecutive.

*N. J. S. A.* 30:4-123.11 reads:

"Any prisoner serving a sentence of life shall be eligible for consideration for release on parole after having served twenty-five years of his sentence, less commutation time for good behavior and time credits earned and allowed by reason of diligent application to work assignments."

I cannot read "*a* sentence" to mean *one* sentence. The Legislature was not speaking of numbers but rather of a sentence

which by its terms would exhaust a human life, and as to such a sentence the Legislature stated its policy that the prisoner shall be "eligible for consideration" for release on parole after serving the minimum period there stated.

The same policy appears in *N. J. S. A.* 30 :4–123.10 which concludes:

"Notwithstanding any of the other provisions of this act, whenever it shall appear that the date upon which a prisoner shall be eligible for consideration for release on parole occurs later than the date upon which he would be so eligible if a life sentence had been imposed upon him, then, and in such case, he shall be deemed eligible for consideration for release on parole after having served 25 years of his sentence, or sentences, less commutation time for good behavior and time credits earned and allowed by reason of diligent application to work assignments."

These provisions express the legislative judgment that imprisonment without hope is wrong; that neither judge nor jury can foretell that a man will never be able or worthy to assume a productive role in society; and that the Parole Board, with the advantage of time, can better make the final judgment. This comports with the philosophy of the constitutional provision that "A system for parole shall be provided by law." *Art.* V, § 2, *par.* 2.

I understand that in a number of instances a sentence for life and a sentence for a term of years have been imposed on a consecutive basis and that the Parole Board deems such a combination to be beyond the provision for eligibility after 25 years. I would read the quoted statutes to apply, but I add that, as in the case of multiple sentences for life, this view would not compel the Parole Board to release a prisoner a single day before he should be. The statement annexed to the bill (A364, February 16, 1953) which added the provision of *section* 123.10 quoted above, correctly noted that:

"* * * It must be remembered that this amendment is designed only to create an eligibility date and in no sense requires the Parole Board to release at any specified time short of the maximum term imposed by the court."

Hence, in deciding whether and when to grant parole in these situations the Board must consider the totality of the prisoner's conduct, including the number of the sentences and the judge's evaluation as he may have expressed it in directing the sentences to be concurrent or consecutive. Ultimately the Board weighs the same elements that may have moved the sentencing authority, but with the advantage of time. We should assume the Parole Board is equal to its responsibility under N. J. S. A. 30:4–123.14:

> "No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned while under sentence, but only if the board is of the opinion that there is reasonable probability that, if such prisoner is released, he will assume his proper and rightful place in society, without violation of the law, and that his release is not incompatible with the welfare of society."

I would therefore modify the judgment in accordance with these views.

Mr. Justice JACOBS joins in this dissent.

HALL, J., concurring in result.

*For affirmance* — Justices FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—5.

*For modification*—Chief Justice WEINTRAUB, and Justice JACOBS—2.