## In re ADVISORY OPINION TO THE GOVERNOR.

Supreme Court of Rhode Island.

Oct. 9, 1980.

Dennis J. Roberts II, Atty. Gen., Alyssa L. Talanker, Sp. Asst. Atty. Gen., Barbara Hurst, John A. MacFadyen III, Asst. Public Defenders, Harris L. Berson, Providence, amici curiae.

To His Excellency J. Joseph Garrahy

Governor of the State of Rhode Island and Providence Plantations

In fulfillment of their constitutional obligation to advise you on questions of law which relate to your official duties as the head of a coordinate branch of government, *Advisory Opinion to the Governor*, R.I., 394 A.2d 1355 (1978), the undersigned forward this communication to you as a reply to your inquiry in which you ask whether an individual who has been sentenced to serve two consecutive life sentences may apply for parole after ten years' imprisonment or whether such a person must serve ten years on each sentence before seeking parole.

A proper response to the issue you posed necessitates a brief recitation of the emergence of consecutive sentences and parole in Rhode Island. Recently, in *State v. Upham*, R.I., 415 A.2d 1029 (1980), the court pointed out that although the right to impose consecutive sentences was well recognized at common law, the General Assembly had as early as 1857 expressly authorized the imposition of such sentences with the enactment of a statute that is now cited as G.L. 1956 (1969 Reenactment) § 12–19–5. In *Upham*, the court also pointed out that the consecutive–sentence statute preceded the establishment of the parole board by more than half a century. The parole board came into existence with the passage of P.L. 1915, ch. 1186. Section 3 of ch. 1186 authorized the parole of a person serving a single sentence when the person had served "one–half of the term for which he was sentenced." In 1915 a prisoner serving more than one sentence could seek parole when he had "served a term equal to one–half of the aggregate time which he shall be liable to serve under his several sentences * * *" unless he had been sentenced to serve consecutive sentences, in which event the prisoner was eligible whenever he had served a term equal to "one–half of the maximum term he was required to serve." A prisoner serving a life sentence could be paroled after completing twenty years of the life sentence, provided all of the members of the parole board voted in the affirmative.

Today, updated portions of sec. 3 to which we have just referred can be found in G.L. 1956 (1969 Reenactment) §§ 13–8–9, 13–8–10 (1979 Cum. Supp.), and 13–8–13 (1979 Cum. Supp.). (The pertinent portions of these sections are set forth in an appendix to this opinion.) In essence, the person serving a single sentence is now eligible for parole when one–third of the sentence has been served, § 13–8–9. Whereas in 1915 the determinative fraction for a prisoner serving a concurrent or consecutive sen-

tence was one–half, here in the 1980s the fraction has been reduced to one–third, § 13–8–10. The eligibility time for a prisoner serving a life sentence has also been reduced so that now such a prisoner can seek parole after having been imprisoned for ten years.

Your Excellency has informed us that on a prior occasion the Department of Corrections has been advised that because of the language of § 13–8–13 and its reference to consecutive sentences, a prisoner serving consecutive life sentences would be eligible for parole once he had served ten years of the initial sentence. We disagree.

The advice given the Department of Corrections was based upon language added to § 13–8–13 by the General Assembly at its January 1970 session. The Senate Journals for the 1970 session indicate that on March 5, 1970, Senate bill S–473 was introduced and referred to the Senate Judiciary Committee. The bill that would have amended § 13–8–13 was entitled "An Act Permitting Inmates Under a Life Sentence to Be Eligible for Parole in Ten Years" and carried with it an explanation prepared by the Legislative Council. The explanation reads, "The act permits inmates under a life sentence to be paroled after ten (10) years." The bill emerged from the Judiciary Committee on April 23, 1970, as S–473 Substitute "A." The substitute, which was entitled "An Act Permitting an Inmate Under a Life Sentence or Lengthy Sentence to be Eligible for Parole in Ten Years," made its way through the requisite legislative channels and became law on April 30, 1970. The amended version of § 13–8–13 can be found in P.L. 1970, ch. 120.

It is obvious that the Legislature, in enacting the amended version of S–473, accepted the premise that if an individual could seek parole after serving ten years of a life sentence, the same opportunity should be afforded other prisoners who were serving lengthy terms,[1] but in our opinion, the General Assembly, because of S–473's constant reference to convicts who are "*under a life sentence*," never intended that a prisoner who was serving consecutive life sentences would come within the reach of S–473 Substitute "A." (Emphasis added.)

In appropriate circumstances, consecutive life sentences serve the valid legislative purpose of protecting the public. *Bangert v. State*, Minn., 282 N.W.2d 540, 546 (1979). In construing a statute in which parole eligibility of a prisoner serving a life sentence required thirty years' service, the Tennessee court reached "the conclusion that [two] consecutive life sentences entail sixty full years of actual confinement." Any other conclusion, the court observed, would completely nullify consecutive life sentences. *Howell v. State*, 569 S.W.2d 428, 434 (Tenn. 1978). Similar sentiments have been expressed by other courts that have considered the problem of parole eligibility for prisoners with multiple life sentences. *State v. McNally*, 26 Conn.Sup. 174, 176, 216 A.2d 446, 447 (1965); *State v. Maxey*, 42 N.J. 62, 69, 198 A.2d 768, 772–73 (1964).

We see nothing in the language of the 1970 amendment which would require us to conclude that an individual who has been found guilty of committing two murders should receive the benefit of the same parole eligibility as an individual who has committed only one murder. The General Assembly has expressly authorized the imposition of consecutive life sentences, and in our opinion, it has not taken any action that would justify a belief that its 1970 largess nullified the rationale of consecutive life sentences.

Thus it is that we answer your inquiry by advising Your Excellency that, in our opinion, an individual who has been sentenced to serve two or more consecutive life sentences must serve ten years on each sentence before seeking parole.

Thomas F. Kelleher
Joseph R. Weisberger
Florence K. Murray

---

1. Appendix B provides a list of the permissible range of punishments that can be imposed after conviction in any court of several categories of crimes. Obviously, it did not make sense that a prisoner who was serving two consecutive thirty–year sentences for robbery and rape would have to serve at least twenty years before being eligible for parole while a prisoner serving a life sentence could seek parole after spending ten years at the Adult Correctional Institutions.

I transmit this advise in response to Your Excellency's inquiry of January 30, 1980, in which you asked our opinion of

"whether or not an individual who is sentenced to two (2) or more consecutive terms of imprisonment for life must serve not less than ten (10) years for parole eligibility, or whether such an individual must serve not less than ten (10) years on each term of life imprisonment for parole eligibility."

In my opinion the Legislature has provided an answer to this question in G.L. 1956 (1969 Reenactment) § 13–8–13, as amended by P.L. 1970, ch. 120. I believe the statute mandates that a person sentenced to life imprisonment, whether under a single life sentence, concurrent life sentences, or consecutive life sentences, is eligible for release on parole after serving not less than ten years' imprisonment.

I have read the language and history of the statutory scheme as a whole and have assigned to the words the Legislature chose their plain and ordinary meaning, and I conclude that the Legislature intended to adopt a comprehensive plan for determining the parole eligibility of every person sentenced to imprisonment in Rhode Island. In my view § 13–8–13 needs no judicial construction at all. The words of the section convey a plain, unambiguous meaning. The Legislature intended the section to apply to all prisoners subject to sentences of imprisonment which will exhaust their lives.

The title of § 13–8–13 declares that the section applies to the "[p]arole of life prisoners," and the opening phrase of the section further bespeaks the legislative intent that the section control "[i]n case of a prisoner sentenced to imprisonment for life." I understand this language to require that § 13–8–13 be referred to in cases of all life prisoners, regardless of how many life sentences they must serve or whether they must serve them concurrently or consecutively. Nothing in the language of the statute supports the conclusion that a prisoner sentenced to serve two or more consecutive sentences of life imprisonment must serve ten years on each sentence before becoming eligible for consideration for parole. Ante at 536.

I have no reservations about the constitutionality of the imposition of consecutive life sentences. *See State v. Upham*, R.I., 415 A.2d 1029 (1980). Nor can I quarrel with the assertion that "consecutive life sentences serve the valid legislative purpose of protecting the public." Ante at 536. However, I cannot understand how the constitutionality of and the purpose underlying consecutive life sentences are completely vitiated by the establishment of a minimum term for the eligibility of life prisoners for parole.

The provisions of § 13–8–13 in no way impinge upon the power of a sentencing justice to require a defendant convicted of multiple crimes punishable by life imprisonment to serve his life sentences consecutively. Recognizing the function of consecutive life sentences in protecting the public from dangerous criminals, the Legislature vested sentencing justices with the discretion to impose consecutive sentences. General Laws 1956 (1969 Reenactment) § 12–19–5. The sentencing justice who exercises this discretion in circumstances in which he deems it necessary accomplishes the goal of protecting the public primarily because of the obvious effect his decision has in increasing the term that a defendant must serve but, more importantly in my view, because he intimates by his decision that he believes that the defendant poses a great danger to the community and that the defendant has little chance of ever becoming rehabilitated. In the case of a prisoner sentenced to consecutive life sentences the latter effect of the sentencing justice's decision is paramount because the sentencing justice cannot increase the term that the defendant must serve; he can only express his firm conviction that the defendant before him is incorrigible. The import of his decision rings clear to the defendant, the public, and the parole board.

Section 13–8–13, on the other hand, has no bearing on the sentencing justice's determination of the proper and fitting punish-

ment for a convicted defendant. Instead § 13–8–13 becomes operative after punishment has been imposed, thereby serving as a mechanism by which experts in penology can monitor and evaluate the progress of the prisoner to determine the appropriate manner in which he will serve his sentence. The Legislature has entrusted to the parole board the decision about whether a prisoner should remain behind bars or should serve his sentence while at large in the community and under the supervision of parole authorities.

As I understand it, the parole system in effect in our state is supposed to facilitate the rehabilitation of persons convicted of crimes by offering prisoners some hope of release from confinement and by releasing the offender from prison in the hope that he will become assimilated into the mainstream of society even as he serves the remainder of his sentence.[1] Moreover, a by–product of this system is a reduction of the violence within our prison system.[2] To guide the parole board's decision of when a prisoner may be ready to serve his sentence without the prison walls and to limit the board's discretion to an extent, the Legislature has enacted statutes to set the minimum time that all prisoners must serve before they can become eligible for release on parole. The Legislature in its wisdom has determined that no prisoner should serve more than ten years before the parole board can review his case to determine whether he is ready for parole. To allow a sentencing justice at the time he imposes punishment to manipulate the statutes to effect a decision that the Legislature clearly intended to take place at a later time and to be made by different authority vests the sentencing justice with a power that the Legislature has not explicitly granted and is, in my view, contrary to the goals of the parole system.

Finally I note that both the New Jersey and the Tennessee Supreme Courts construed statutory language that provided for parole eligibility after a prisoner had served a minimum term following a sentence of *a* term of life. *See* N.J.Stat.Ann. § 30:4–123:11 (1939); Tenn. Code Ann. § 40–3613 (1975). The majority of the New Jersey Supreme Court and a unanimous Tennessee Supreme Court construed their Legislatures' use of the article "a" to mean that the statutes applied only when a single life sentence had been imposed. *State v. Maxey*, 42 N.J. 62, 71, 198 A.2d 768, 774 (1964); *Howell v. State*, 569 S.W.2d 428, 431 (Tenn. 1978). *But see State v. Maxey*, 42 N.J. 62, 77, 198 A.2d 768, 778 (1964) (Weintraub, C. J., dissenting). Having rendered the statutes in question inapplicable, both courts went on to determine, on their own accord and in the absence of legislative guidance, that a prisoner sentenced to multiple life sentences must serve as many minimum terms as number of sentences before he could be eligible for parole. And a Connecticut Superior Court concluded without discussion that a defendant sentenced to more than one life sentence must serve the identical number of minimum terms on each sentence to qualify for parole consideration. *State v. McNally*, 26 Conn.Sup. 174, 216 A.2d 446 (1965). At any rate, the controlling statute in Connecticut invests the sentencing justice with the power to determine the minimum term that a life prisoner must serve before he can be considered eligible for parole. Conn.Gen.Stat. § 54–125 (1958). The Rhode Island statute in question here, § 13–8–13, clearly does not speak in terms of numbers of sentences but rather in terms of the duration of imprisonment. Moreover, § 13–8–13 does not empower the sentencing justice in Rhode Island to set a minimum term for parole eligibility at the time of sentencing. Furthermore, I am not persuaded by these

1. According to Professor Tromanhauser "[i]f a man is held within the degrading, dehumanizing, all–corrupting atmosphere of our nation's prisoners any longer than *is absolutely necessary*, that man is being greatly damaged and so is the society." Tromanhauser, Parole, in *Justice, Punishment, Treatment* at 463 (Orland, ed.

1973). *See also* Alschuler, *Sentencing Reform and Parole Guidelines*, 51 Colo.L.Rev. 237, 237 (1980).

2. Glasser, *Comments on Determinate Sentencing*, 23 Crime & Delinquency 207–08 (1977).

opinions since nowhere in these opinions do the courts reflect upon the effect that their decisions to cumulate the time that must be served to qualify for parole according to the number of sentences imposed would have on the parole system.

For the foregoing reasons I reiterate my opinion that a prisoner in Rhode Island sentenced to consecutive life sentences must serve not less than ten years of a prison sentence before becoming eligible for consideration for parole regardless of the number of sentences imposed.

Joseph A. Bevilacqua
Chief Justice

DORIS, J., did not participate.

### Appendix A

"13–8–9. Issuance of parole.–The parole board in the case of any prisoner whose sentence is subject to its control, unless such prisoner be sentenced to imprisonment for life, * * * may by an affirmative vote of a majority of the members of the board, issue to such prisoner a permit to be at liberty upon parole, whenever such prisoner has served not less than one–third (⅓) of the term for which he was sentenced. Such permit shall entitle the prisoner to whom it is issued to be at liberty during the remainder of his term of sentence upon such terms and conditions as the board may prescribe."

"13–8–10. Prisoners subject to more than one sentence.–(a) If such prisoner be confined upon more than one (1) sentence, such permit may be issued whenever he has served a term equal to one–third (⅓) of the aggregate time which he shall be liable to serve under his several sentences, unless he has been sentenced to serve two (2) or more terms concurrently, in which case such permit shall be issued when he has served a term equal to one–third (⅓) of the maximum term he was required to serve."

"13–8–13. Parole of life prisoners and prisoners with lengthy sentences.–In case of a prisoner sentenced to imprisonment for life, such permit may be issued at any time after such prisoner has served not less than ten (10) years imprisonment provided, however, in case of a prisoner serving a sentence or sentences of a length making him ineligible for a permit in less than ten (10) years pursuant to § 13–8–9 and § 13–8–10, such permit may be issued at any time after such prisoner has served not less than ten (10) years imprisonment, and provided further that the aforesaid permit shall be issued only by a unanimous vote of all the attending members of the board, providing that not less than four members are present, and whenever after the issue of such permit such prisoner shall be pardoned, then the control of the board over such prisoner shall cease and determine * *."

### Appendix B

| Crime | Potential Punishment | |
| --- | --- | --- |
| Arson | 5 years to life | § 11–4–1 (1979 Cum.Supp.) |
| Assault with a dangerous weapon in a dwelling house | 10 years to life | § 11–5–4 |
| Burglary | 5 years to life | § 11–8–1 |
| Delivery of a narcotic by a person not a drug addict | up to life | § 21–28–4.01(A) |
| Distribution of a narcotic to a minor | up to life | § 21–28–4.07(A) |
| Kidnapping with intent to extort | 5 years to life | § 11–26–2 |
| Sexual assault—1st degree | 10 years to life | § 11–37–3 (1979 Cum.Supp.) |
| Robbery | 5 years to life | § 11–39–1 |
| Treason | life | § 11–43–1 |