**Gordon T. BEST, Plaintiff, Appellant,**

v.

**John C. STETSON, et al., Defendants, Appellees.**

**No. 81–1701.**

United States Court of Appeals, First Circuit.

Submitted June 11, 1982.

Decided Sept. 29, 1982.

Gordon T. Best, on brief, pro se.

William F. Weld, U. S. Atty., and Gregory C. Flynn, Asst. U. S. Atty., Boston, Mass., on brief, for defendants, appellees.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

BREYER, Circuit Judge.

Gordon Best, initially an alien, now an American citizen, appeals *pro se* from a summary judgment entered against him by the district court. The court affirmed a decision of the Federal Employee Appeals Authority, which in turn upheld the Air Force's decision dismissing Best from his job as a civilian research physicist. The Air Force dismissed Best, not because it was dissatisfied with his performance, but, rather, as part of a "reduction in force" (RIF) that abolished his position. Had Best been a member of the "competitive" service, he could have enjoyed tenure in the form of "bumping and retreat" rights; but because he was a member of the "excepted" service, he had no such rights.

Best made two arguments in the district court. First, he claimed that he "automatically" became a member of the "competitive" service when he notified the Civilian Personnel Board that he had acquired American citizenship. The district court rejected this argument on the ground that the relevant rules and regulations provide a different procedure for such a change in status. Second, Best argued that the government was estopped from denying that he was a member of the "competitive" service. As to this issue, we believe that the district court erred in granting a summary judgment, for the papers before us indicate that there was a "genuine issue" as to a "material fact." Fed.R.Civ.Pro. 56(c).

The facts, in brief, are as follows. Best came to the United States from Ireland in 1963. In 1967 the Air Force hired him to work as a research physicist at Hanscom Field, Massachusetts. Best initially was given a TAPER appointment, which is a temporary appointment in the *competitive* service. The government says that this initial appointment was a mistake because civil service regulations, 5 C.F.R. § 338.101(a) (1976), then prohibited appointing an alien to the competitive service. In June 1970 the Air Force promoted Best, giving him a grade increase; it also (apparently relying upon this regulation) changed his appointment to the "excepted" service. (The noti-

fication said "Conv. to Exc. Appt.") About five months later, Best became an American citizen and notified the Personnel Office, presumably so that he would be placed in the "competitive" service. This change was never made.

Four years later, in November 1974, Best's supervisor, Norman Rosenberg, noticed that Personnel Office records showed that Best was still in the "excepted" service. He told Best and suggested that Best talk to Mary Coakley in the Personnel Office. According to Best's (controverted) account of what happened next, he explained the situation to Coakley, pointing out that he wanted to be in the "competitive," not the "excepted" service. He says that Coakley, after checking the list, told him he was not in the "excepted" service, which he took to mean that he was in the "competitive" service. Best says he reviewed his file again with another Personnel Office staff member in January 1976, and that in his (possibly controverted) opinion, nothing there suggested to him he was still in the "excepted" service. Two months later, the Air Force abolished his position. The Air Force gave him no "bumping" or "retreat" rights because, it stated, he was in the "excepted" service.

Best appealed *pro se* to the Federal Employee Appeals Authority of the Civil Service Commission. The Authority, in March 1976, held that Best was an "excepted" employee on the basis of the Federal Personnel Manual (ch. 300, subch. 11, ¶ 11–2d), which indicates that an alien who becomes a citizen must take an examination and follow certain other procedures before he can change to the competitive service. Since Best had not followed the Manual's procedures, he was not in the competitive service. The Authority held that this ground was sufficient to reject Best's appeal; hence it need not decide which of the different accounts of the Best/Coakley conversation was correct. The Authority also noted that the Supreme Court had recently held unconstitutional the regulation that excluded aliens from the competitive service. *Hampton v. Mow Sun Wong,* 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976). It wrote, how-

ever, that it had "no authority" except to decide as it would have decided "prior to that decision."⁸ Best then sought review in the district court. The court, as we previously pointed out, granted summary judgment for the government.

■ In our view, summary judgment was not proper because Best may prove facts sufficient to estop the government from denying that he was in the competitive service. Estoppel against the government is unusual; but courts undeniably have the power to estop the government. *United States v. Rexach,* 558 F.2d 37, 43 (1st Cir. 1977). *See* K. Davis, *Administrative Law of the Seventies* §§ 17.01 et seq. (1976); Note: *Equitable Estoppel of the Government,* 79 Colum.L.Rev. 551 (1979). Recent cases discussing estoppel have noted the relevance of four factors: 1) the statements or actions of the government officials; 2) reliance to one's detriment; 3) the reasonableness of the reliance; and 4) the risk, through estoppel, that a government official will, in effect, "waive" congressionally enacted public policy. *See generally Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (*per curiam*); *Cooper v. Bell,* 628 F.2d 1208 (9th Cir. 1980). It is primarily this fourth factor that distinguishes "governmental" from "ordinary" estoppel, for any unfairness to a party of denying estoppel often is outweighed by the importance to the public of enforcing the underlying congressional policy.

■ In this case, the fourth factor is of less than usual significance. Contained in a personnel manual, not a statute, the policy as it is in issue here is derived from a regulation that the Supreme Court has specifically declared unconstitutional. *Hampton v. Mow Sun Wong, supra.* And the agency itself—even before the declaration of unconstitutionality—may often have honored the policy in the breach, as evidenced by affidavits and practice in this case.

Under these circumstances, the legal standard applicable to the estoppel issue is

closer to that involved in ordinary cases of estoppel, and the facts relevant to the application of that standard are here in dispute. The district court says that it accepted Best's version of the Best/Coakley conversation. Yet Best claims that Coakley's statement to him amounted to a statement, in context, that he was in the "competitive" service. The district court apparently felt that Coakley's statement could not be read in this way, but that would seem to be a matter in dispute. Regardless, it seems to us that the extent of Best's reliance on Coakley's statements and the reasonableness of that reliance rests upon disputed matters of fact. The context in which Rosenberg's, Best's, and Coakley's actions and statements took place is highly relevant.

Recently, in *Akbarin v. Immigration and Naturalization Service,* 669 F.2d 839 (1st Cir. 1982), we held that it was error in that case to deny an alien the opportunity to present evidence to support his claim that the government should be estopped from deporting him. In *Akbarin,* we remanded for a new hearing. Given the minimal importance of the agency policy underlying Best's transfer to the "excepted" service, we believe this case is stronger than *Akbarin.* We think this case should be sent back to the agency—where Best has never had a hearing—for a hearing and determination of the estoppel issue. *Semaan v. Mumford,* 335 F.2d 704 (D.C.Cir.1964).

We also note that the district court did not address the question of the effect of *Hampton v. Mow Sun Wong, supra,* on Best's status. The agency stated that it would continue to follow the regulation found unconstitutional in *Hampton,* apparently until the regulation itself was changed. While we state no opinion as to the effect of the *Hampton* decision on this case, we believe that the agency should reconsider its relevance, particularly in view of the fact that Best originally was appointed and served for some time on a temporary appointment in the competitive service and then was transferred to the "excepted" service on the basis of a regulation found unconstitutional.

*Judgment vacated and case remanded for further proceedings not inconsistent with this opinion.*