**Maurice R. LERNER,
Plaintiff, Appellee,**

v.

**Matthew GILL, etc., et al.,
Defendants, Appellants.**

**No. 84–1136.**

United States Court of Appeals,
First Circuit.

Argued Sept. 5, 1984.

Decided Jan. 4, 1985.

Dennis J. Roberts, II, Atty. Gen., Providence, R.I., with whom Sharon O'Keefe, Sp. Asst. Atty. Gen., Chief, Appellate Div., Providence, R.I., was on brief, for defendants, appellants.

Robert M. Bonin, Boston, Mass., with whom Bonin & Zalcman, Boston, Mass., was on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and SELYA,* District Judge.

* Of the District of Rhode Island, sitting by designation.

LEVIN H. CAMPBELL, Chief Judge.

The State of Rhode Island appeals from a judgment of the United States District Court for the District of Rhode Island overturning as an ex post facto law the state's denial of parole eligibility to petitioner Maurice Lerner. We reverse.

On April 20, 1968, Maurice Lerner murdered two men in Rhode Island with a shotgun, apparently in fulfillment of a mobster "contract." The particulars are related in *State v. Patriarca*, 112 R.I. 14, 308 A.2d 300 (1973), and *State v. Lerner*, 112 R.I. 62, 308 A.2d 324 (1973). Lerner was arrested soon after and was charged by the state with two counts of murder and one count of conspiracy. When the killings occurred, a Rhode Island statute then provided that prisoners sentenced to imprisonment for life had to serve not less than 20 years' imprisonment before becoming eligible for parole. R.I.Gen.Laws § 13–8–13 (1956) adopted in 1960 R.I.Pub.Laws 115, § 1.[1] After Lerner's arrest and indictment, but prior to his trial, this statute was amended, effective April 30, 1970, to provide that prisoners sentenced to imprisonment for life had to serve not less than ten years' imprisonment before becoming eligible for parole, *see* 1970 R.I.Pub.Laws 120, § 1, R.I.Gen.Laws § 13–8–13 (1969 Reenactment).[2] On September 14, 1970, having been found guilty on all three counts, Lerner was sentenced to two life terms for the two murders and ten years for conspiracy, all of which sentences, the court directed, were to be served consecutively.

On January 29, 1973, the then Attorney General of Rhode Island, Richard Israel, advised the Parole Board in another context that persons sentenced to multiple sentences which were not imposed simultaneously were deemed to be serving concurrent sentences for parole eligibility purposes. This opinion did not interpret the statute relevant to Lerner, R.I.Gen.Laws § 13–8–13, but rather interpreted a related provision, R.I.Gen.Laws § 13–8–10. (There seems to be no question, moreover, that Lerner's sentences were imposed both simultaneously and with the express direction that they be consecutive.)

On August 3, 1976, Attorney General Julius Michaelson, who had replaced Israel, was asked by the Rhode Island Department of Corrections for his opinion concerning

1. The text of this statute is as follows:

    **13–8–13. Parole of life prisoners.**—In case of a prisoner sentenced to imprisonment for life, such [parole] permit may be issued at any time after such prisoner has served not less than twenty (20) years imprisonment, but shall be issued only by a unanimous vote of all the members of the board, and whenever after the issue of such permit such prisoner shall be pardoned, then the control of the board over such prisoner shall cease and determine, provided, however, that in case of a prisoner sentenced to imprisonment for life who is convicted of escape or attempted escape from the lawful custody of the warden of the adult correctional institutions such permit may be issued only after such prisoner has served not less than twenty-five (25) years imprisonment, and, provided, further, that for each subsequent conviction of such escape or attempted escape, an additional five years shall be added to the time so required to be served.

2. The new statute reads:

    **13–8–13. Parole of life prisoners and prisoners with lengthy sentences.**—In case of a prisoner sentenced to imprisonment for life, such permit may be issued at any time after such prisoner has served not less than ten (10) years imprisonment provided, however, in case of a prisoner serving a sentence or sentences of a length making him ineligible for a permit in less than ten (10) years pursuant to § 13–8–9 and § 13–8–10, such permit may be issued at any time after such prisoner has served not less than ten (10) years imprisonment, and provided further that the aforesaid permit shall be issued only by a unanimous vote of all the attending members of the board, providing that not less than four members are present, and whenever after the issue of such permit such prisoner shall be pardoned, then the control of the board over such prisoner shall cease and determine; provided, however, that in case of a prisoner sentenced to imprisonment for life who is convicted of escape or attempted escape from the lawful custody of the warden of the adult correctional institutions such permit may be issued only after such prisoner has served not less than twenty-five years imprisonment; and, provided, further, that for each subsequent conviction of such escape or attempted escape, an additional five (5) years shall be added to the time so required to be served.

the date Lerner would be legally eligible for parole. Michaelson advised the Department that under R.I.Gen.Laws § 13–8–13 (1969 Reenactment), Lerner would become first eligible for parole on August 14, 1979, *i.e.*, after serving ten years.[3] Following the Attorney General's letter, Lerner was transferred from a maximum to a minimum security facility, and he was granted work release and furlough privileges, all of which accompanied parole-eligible status. Lerner's family moved to Rhode Island, and his mother invested in a Nautilus facility there to create an employment opportunity for him in the event he was paroled.

In March and September 1979 Lerner appeared before the Parole Board but was denied parole on both occasions. On October 19, 1979, the new Attorney General, Dennis Roberts, II, disagreeing with his predecessor in office, responded to a Parole Board inquiry that under section 13–8–13, a prisoner like Lerner who had been sentenced to two consecutive life sentences had to serve ten years for *each* sentence, consecutively, for a total of 20 years, before becoming legally eligible for parole. In Lerner's case, this meant that he would have to serve a minimum of approximately ten more years before becoming parole-eligible. Following this letter, Lerner was returned to maximum security.

On October 9, 1980, the Supreme Court of Rhode Island, responding to a question put by the Governor, issued an advisory opinion which was in accord with Attorney General Roberts's interpretation of the ten-year provision in the 1970 version of section 13–8–13. *In re Advisory Opinion to the Governor,* 421 A.2d 535 (R.I.1980) (Bevilacqua, C.J., dissenting). On May 7, 1981, the legislature went a step further, amending section 13–8–13 to include a directive that in the case of a prisoner sentenced consecutively to more than one life term for crimes committed after May 7, 1981, he must serve not less than ten years consecutively on each life sentence. While limited to crimes occurring after May 7, 1981, this amendment contained a clause negating any implication that prisoners serving consecutive life sentences for earlier crimes were to be eligible after only ten years. *See* R.I.Gen.Laws § 13–8–13 (1981 Reenactment) (Supp.1984).[4]

On May 11, 1981, Lerner filed a petition for habeas corpus in the United States District Court for the District of Rhode Island. The court stayed proceedings in order to enable Lerner to exhaust state remedies. Lerner then filed an application for post-conviction relief in the Superior Court of Rhode Island, which was granted, the jus-

---

**3.** Lerner's sentences were regarded as running from August 14, 1969, the date of his arrest.

**4.** The statute now provides:

> **13–8–13. Parole of life prisoners and prisoners with lengthy sentences.**—(a) In case of a prisoner sentenced to imprisonment for life, such permit may be issued at any time after such prisoner has served not less than ten (10) years imprisonment provided, however, in case of a prisoner serving a sentence or sentences of a length making him ineligible for a permit in less than ten (10) years pursuant to § 13–8–9 and § 13–8–10, such permit may be issued at any time after such prisoner has served not less than ten (10) years imprisonment, and provided further that the aforesaid permit shall be issued only by a unanimous vote of all the attending members of the board, providing that not less than four members are present, and whenever after the issue of such permit such prisoner shall be pardoned, then the control of the board over such prisoner shall cease and determine; pro-
> vided, however, that in case of a prisoner sentenced to imprisonment for life who is convicted of escape or attempted escape from the lawful custody of the warden of the adult correctional institutions such permit may be issued only after such prisoner has served not less than twenty-five (25) years imprisonment; and, provided, further, that for each subsequent conviction of such escape or attempted escape, an additional five (5) years shall be added to the time so required to be served. (b) In case of a prisoner sentenced consecutively to more than one life term, for crimes occurring after [May 7, 1981], such permit may be issued only after such prisoner has served not less than ten (10) years consecutively on each life sentence; provided, however, that nothing contained in this subsection shall be construed as permitting the issuance of such a permit when a prisoner who has been sentenced consecutively to more than one life term for crimes occurring before [May 7, 1981] has served not less than ten (10) years on each life sentence.

tice finding Attorney General Roberts's construction of section 13–8–13, and the Parole Board's current acceptance thereof, to be a violation of the prohibition against ex post facto laws in the United States Constitution. On appeal this judgment was reversed by the Supreme Court of Rhode Island which, as in its advisory opinion, favored Attorney General · Roberts's construction. *Lerner v. Gill,* 463 A.2d 1352 (R.I.1983) (Bevilacqua, C.J., dissenting). State proceedings having been exhausted, the district court vacated its stay and issued an opinion and order granting the petition for habeas corpus on the ground that the state's denial of parole eligibility after the passage of ten years was a violation of the provision in the federal Constitution prohibiting a state from passing an ex post facto law. U.S. Const. art. I, § 10, c. 1. *Lerner v. Gill,* 580 F.Supp. 1056 (D.R.I.1984). From this judgment the State now appeals.

### I.

■ The constitutional prohibition against a state's passing an ex post facto law bars, among other things, "every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed." *See Calder v. Bull,* 3 U.S. (3 Dall.) 385, 390, 1 L.Ed. 648 (1798); *Lindsey v. Washington,* 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937). The main purpose of the prohibition is to assure that legislative acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. *See Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 963, 67 L.Ed.2d 17 (1981); *Calder v. Bull,* 3 U.S. (3 Dall.) at 387.

■ The Supreme Court of the United States has held that parole eligibility is part of the "law annexed to the crime" for ex post facto purposes. *See Warden v. Marrero,* 417 U.S. 653, 663, 94 S.Ct. 2532, 2538, 41 L.Ed.2d 383 (1974). *See also Breest v. Helgemoe,* 579 F.2d 95, 102 (1st Cir.1978); *Rodriguez v. United States Parole Commission,* 594 F.2d 170, 175 (7th Cir.1979); *Geraghty v. United States Parole Commission,* 579 F.2d 238, 265 (3d Cir.1978), *vacated on other grounds,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1981). Thus, if the version of section 13–8–13 that became effective in 1970, as presently construed by Rhode Island authorities and the state Supreme Court, required Lerner to undergo a longer period of incarceration before parole than would have been true under the law in effect in 1968 when Lerner committed the murders, we might agree with the district court. *Breest v. Helgemoe,* 579 F.2d at 102. *See also Love v. Fitzharris,* 460 F.2d 382 (4th Cir. 1972), *vacated as moot,* 409 U.S. 1100, 93 S.Ct. 896, 34 L.Ed.2d 682 (1973); *Piper v. Perrin,* 560 F.Supp. 253 (D.N.H.1983). But such is not the case. When on April 20, 1968, Lerner committed the crimes, persons given even a single life sentence had to serve a minimum of 20 years before being eligible for parole. *A fortiori* two consecutive life sentences would have resulted in at least that (the question of whether they would have required 40 years does not seem to have come up). Therefore, the state's present reading of the 1970 revision, that one sentenced consecutively for two life sentences must serve a minimum of 20 years, does not subject Lerner to any more onerous a penalty than was imposed by the law affixed to the crime when committed.

"It is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law." *Dobbert v. Florida,* 432 U.S. 282, 294, 97 S.Ct. 2290, 2299, 53 L.Ed.2d 344 (1977). Here Lerner's required incarceration before parole eligibility "was twenty years then and it is twenty years now," in the district court's own words, 580 F.Supp. at 1060. Insofar as the purpose of the ex post facto clause is to give persons a fair warning of the punishment they can expect for their crimes, petitioner has not in any way been made worse by the action of the Parole Board. Even after Attorney General Michaelson's lenient interpretation of the 1970 statute was replaced by a stricter one, Lerner remained eligible for parole as soon as would have

been true under the law in effect when he committed his crimes. Since the amended law, as presently construed, is no more onerous than the old, there is no violation of the constitutional guarantee against ex post facto laws. *Id. See also Calder v. Bull,* 3 U.S. (3 Dall.) at 390; *Breest v. Helgemoe,* 579 F.2d at 102–03; *Hayward v. United States Parole Commission,* 659 F.2d 857, 862 (8th Cir.1981); *Warren v. United States Parole Commission,* 659 F.2d 183, 193–97 (D.C.Cir.1981). *But see Geraghty v. United States,* 579 F.2d at 264.

While the district court acknowledged that petitioner's punishment is no more severe under the currently construed 1970 statute than under the prior statute in effect when the crime was committed, the court declined to accept the state's argument that this fact defeated petitioner's claim of an ex post facto violation. 580 F.Supp. at 1062. The court gave three reasons. First, the court thought it significant that the state was not denying parole consideration "on the basis of the law as it existed at the time of the offense." Second, the court pointed out that, technically, the 20 year statute had been repealed, reasoning, "[i]t is plausible to argue that since the twenty year statute has been repealed and if it was the only statute which could be applied, there is now no requirement of any time which Petitioner would have to serve in order to be parole eligible." Last, the court concluded that petitioner was entitled to the benefit of any subsequently adopted less stringent legislation and that this benefit could not be withdrawn ex post facto. We find these arguments unpersuasive.

With respect to the first, it is of course true that Rhode Island is not now seeking to apply the repealed version of R.I.Gen. Laws § 13–8–13 which was in effect when the crimes were committed. Rather the state is applying the amended version of that statute which took effect in 1970, a few years later. This is permissible. As we said in *Breest,*

From the earliest judicial construction to the present ... it has also been clear that application of a law, enacted after the crime, which changes the punishment, is not in and of itself unconstitutional. Only those which inflict greater or additional punishment are banned.

579 F.2d at 102. The Supreme Court said many years ago, "every retrospective law is not an *ex post facto* law." *Calder v. Bull,* 3 U.S. (3 Dall.) at 390. *See also Gibson v. Mississippi,* 162 U.S. 565, 590, 16 S.Ct. 904, 910, 40 L.Ed. 1075 (1896). The ex post facto provision in the Constitution simply places a ceiling on the amount of punishment that subsequent laws can impose for the earlier crime, *i.e.,* the punishment can be no more stringent than that available under the law prevailing when the crime was committed.

The law prevailing at the time petitioner committed the murders provided for 20 years incarceration before parole eligibility. It is against this statute that the challenged construction of the later law must be measured to determine whether it operates "to the detriment or material disadvantage of the wrongdoer." *Lindsey v. Washington,* 301 U.S. at 401, 57 S.Ct. at 799. *See Rodriguez v. United States Parole Commission,* 594 F.2d at 175 n. 6; *Hayward v. United States Parole Commission,* 659 F.2d at 862; *United States ex rel. Forman v. McCall,* 709 F.2d 852, 856 (3d Cir.1983). It is immaterial that this earlier statute is not the statute being enforced.

The above also answers the court's second reason. As the subsequent law was no more stringent, it is not correct that by repealing the old law, the state did away with the only law it could constitutionally apply. The Supreme Court's decision in *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), is instructive. In *Dobbert,* petitioner was a prisoner sentenced to death for first degree murder under Florida law. He based his ex post facto claim on the contention that at the time the crime was committed, no death penalty was in effect in Florida because the

state's death penalty statute had later been found unconstitutional by the Supreme Court of Florida under the principles announced in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The United States Supreme Court rejected this claim, holding that:

> [T]his sophistic argument mocks the substance of the *Ex Post Facto* Clause. Whether or not the old statute would, in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon the murderers. The statute was intended to provide a maximum deterrence, and its existence on the statute books provided a fair warning as to the degree of culpability which the State ascribed to the act of murder.

> .     .     .     .     .

> Here the existence of the statute served as an "operative fact" to warn petitioner of the penalty which Florida would seek to impose on him if he were convicted of first degree murder. This was sufficient compliance with the *ex post facto* provision of the United States Constitution.

432 U.S. at 297, 97 S.Ct. at 2300. The present case is, of course,. even stronger, since there is no question of the constitutionality of the twenty-year law that was in effect when the crimes were committed. While that law was extinguished when repealed, being replaced by the 1970 ten-year parole statute, it had provided a fair warning of the minimum period of incarceration that a prisoner sentenced to life imprisonment could expect.

■ Petitioner argues that by the time of sentencing, the 20-year law had been replaced by a law providing for a lesser penalty, and suggests that we must look to the law on that date as establishing the permissible waiting time for parole eligibili-ty. But it is the date when the crime was committed, not when the prisoner was sentenced, that is critical for ex post facto analysis. *Marshall v. Garrison*, 659 F.2d 440, 442 n. 3 (4th Cir.1981); *Rodriguez v. United States Parole Commission*, 594 F.2d at 175 n. 6; *United States ex rel. Forman v. McCall*, 709 F.2d at 856. See *Breest v. Helgemoe*, 579 F.2d at 103 (rejecting date of indictment as a relevant date for ex post facto analysis).

Finally, the court below reasoned that a state must retroactively afford a prisoner the benefits of any less stringent legislation adopted after the crime and that these benefits, once so afforded, cannot be retroactively withdrawn. The cases of *Rooney v. North Dakota*, 196 U.S. 319, 25 S.Ct. 264, 49 L.Ed. 494 (1905) and *Breest v. Helgemoe*, 579 F.2d 95, relied on by the district court, do not, we think, support this conclusion.[5] Nor do we find support for it elsewhere either in the language of the Constitution or in the jurisprudence of the Supreme Court. *Dobbert v. Florida* militates against this view inasmuch as there the petitioner was denied the benefit of a later declaration of unconstitutionality. See also *Solem v. Stumes*, —— U.S. ——, ——, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984) (Constitution does not require retrospective effect of favorable judicial decisions); *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965) (same). *Cf.* W. LaFave & A. Scott, *Criminal Law*, at 98–99 (1972) (at common law a prisoner is not entitled to be set free upon repeal of the law creating the crime for which he was convicted). And in *Weaver v. Graham*, 450 U.S. at 30, 101 S.Ct. at 965, the Court said,

> Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when

5. In *Rooney v. North Dakota*, the Supreme Court held that a retroactive law which increased the period of confinement before the execution of a prisoner was not an ex post facto law because the change, far from being prejudicial, actually benefitted the prisoner by extending his life. In

*Breest v. Helgemoe*, we upheld the retroactive application of a New Hampshire statute providing a previously unavailable parole to life prisoners, while establishing a classification which imposed a lengthier minimum term for psychosexual offenders.

the legislature increases punishment beyond what was prescribed when the crime was consummated.

Moreover, to imply that the Rhode Island legislature intended to apply to petitioner the same ten year minimum period required for prisoners serving *a single* life sentence is to beg the question. While Attorney General Michaelson construed the 1970 amendment in this manner, his successor did not, and most significantly, the Supreme Court of Rhode Island has not. *See* R.I. Const. Amend. XII, § 1 (Supreme Court has final revisory jurisdiction over all questions of law). Before petitioner's case the question of the statute's meaning with respect to a prisoner serving consecutive life sentences had not been finally determined. While at first the Parole Board and the then Attorney General thought Lerner was eligible within ten years, they did so as a matter of construing the statute, not in exercise of any power of their own to legislate in such matters. They had no power to deprive the state Supreme Court of the right to construe the state statute authoritatively. *See Breest v. Helgemoe*, 579 F.2d at 103; *Mileham v. Simmons*, 588 F.2d 1279, 1280 (9th Cir.1979); *Holguin v. Raines*, 695 F.2d 372, 374–75 (9th Cir.1982), *cert. denied*, —— U.S. ——, 104 S.Ct. 246, 78 L.Ed.2d 235 (1984). *See also Heckler v. Community Health Services of Crawford County, Inc.*, —— U.S. ——, ——, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984) (government not estopped on the same terms as other litigants); *Best v. Stetson*, 691 F.2d 42, 44 (1st Cir.1982) (same); *Akbarin v. Immigration and Naturalization Service*, 669 F.2d 839, 842 (1st Cir.1982) (same). Contrary to the district court's conclusion, the ex post facto clause does not give a prisoner a vested right to a favorable, but erroneous, interpretation of the law, *Mileham v. Simmons*, 588 F.2d at 1280.

We hold that the authoritative construction of section 13–8–13 by the state's highest court does not amount to an ex post facto law since it is not more onerous than the law annexed to the crimes when they were committed.

## II.

Petitioner argues that even if no ex post facto violation is involved, it is a violation of due process to withhold parole eligibility from him for 20 years. He points to *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1963), where the Supreme Court struck down a novel and unprecedented construction of a state criminal trespass statute which the Supreme Court of South Carolina had adopted in affirming the convictions of two black college students who had entered, and declined to leave, a segregated lunch room. The Court held that it violated basic due process for a state court to convict someone in reliance upon a "retroactive criminal prohibition[ ]." *Id.* at 354, 84 S.Ct. at 1703. The Court said,

> If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect.

*Id.*

A major premise of *Bouie* and other cases involving inadequate advance definitions of a crime is that a person should be able to discover before he acts what conduct is criminal so that he may decide whether or not to conform his conduct to the law. 378 U.S. at 352, 84 S.Ct. at 1701. No such issue exists here: the challenged law did not purport to define a crime; Lerner was not presented with the option of conforming his conduct in some way to the terms of the law if only it had been more clearly written. *Bouie* is thus, at most, of tangential relevance.[6]

---

6. Neither do we find controlling the Supreme Court cases which hold that it is a violation of due process to convict persons who had earlier relied on the assurances of officials that their conduct was *not* in violation of law. *United States v. Pennsylvania Chemical Corp.*, 411 U.S.

655, 670–75, 93 S.Ct. 1804, 1814–17, 36 L.Ed.2d 567 (1972); *Raley v. Ohio*, 360 U.S. 423, 437–40, 79 S.Ct. 1257, 1265–67, 3 L.Ed.2d 1344 (1959); *Cox v. Louisiana*, 379 U.S. 559, 571, 85 S.Ct. 476, 484, 13 L.Ed.2d 487 (1965). In those cases, the key factor was reliance upon the misleading

But while a parole eligibility statute raises different considerations than one defining a crime, this court suggested in *Breest v. Helgemoe,* 579 F.2d 95, that because prisoners may come to rely upon established parole eligibility standards, unforeseeable changes in such standards made after the passage of a substantial period of time may, in some presumably extreme circumstances, be fundamentally unfair and hence violative of due process even if designed to correct an illegal sentence. 579 F.2d at 101. The question here, therefore, is whether the Rhode Island Supreme Court's construction of the 1970 parole statute was so unforeseeable, and Lerner's reliance on a more favorable interpretation so prejudicial, as to bring Lerner within the ambit of the principle we suggested in *Breest.* We do not think so.

With regard to the unforeseeability of the state's current view, the district court observed that several Rhode Island officials as well as the dissenting justice of the Rhode Island Supreme Court had read the statute to make Lerner parole-eligible within ten years. The court felt that this and the absence of any specific provision in the 1970 statute dealing with the effect of consecutive sentences, made it unlikely that anyone would have foreseen the interpretation later adopted by Attorney General Roberts and, ultimately, by the state Supreme Court. 580 F.Supp. at 1062.

But we think the state's present reading of the statute has a firmer basis in the statutory language than the district court believed. That construction, although not the only conceivable one, is consistent with the statutory language and would seem to better implement the intentions of a sentencing judge who has imposed two life sentences with directions that they be served "consecutively." Common sense suggests that when a judge imposes consecutive life sentences, he intends the prisoner to be subjected to the effect of *both* sentences insofar as possible, which means

two parole waiting periods, not merely one. To require parole eligibility for Lerner at the end of ten years would be to ignore the above considerations. The state's construction is explained at length in the state court's opinion, and its reasoning is neither irrational nor without substantial basis in the language of the statute. *See Lerner v. Gill,* 463 A.2d at 1364–65; *In re Advisory Opinion to the Governor,* 421 A.2d at 536. *Compare Mileham v. Simmons,* 588 F.2d at 1280 (interpretation that sentence for escapee does not begin to run until prior sentence has been served is not unforeseeable). Hence we do not agree that the state's current view of the statute was unforeseeable.

A more difficult question is whether the nearly three-year period during which the Parole Board, relying on the then Attorney General's interpretation, accepted the ten-year interpretation was so lengthy or otherwise oppressive as to cause the subsequent construction to violate due process in Lerner's case. *Breest v. Helgemoe,* 579 F.2d at 101.

Lerner contends that the period during which he was misled by the Parole Board was closer to ten years than three, but prior to Attorney General Michaelson's letter of August 3, 1976, advising the Department of Corrections that Lerner would be parole-eligible on August 14, 1979, the statute had not been officially construed, and for reasons already mentioned we do not think the statute on its face entitled Lerner to assume he would necessarily be eligible in ten years. Certainly the prior ruling by Attorney General Israel relative to a different statute, treating sentences that were not imposed simultaneously as concurrent, provided no basis for forecasting the construction of this law. If anything, it implied that consecutive sentences would give rise to different considerations. We do not think the state can be said to have misled Lerner before the Michaelson opinion on

advice, resulting in tangible injury, *i.e.,* imposition of criminal sanctions, to defendants—a form of "sandbagging." In all those cases, had defendants not been misled they might have

altered their conduct so as to have avoided the punishment later sought to be imposed. Lerner was in no such position.

August 14, 1976; and by early 1979 it had thrown cold water on that opinion by denying him parole.

Nonetheless, the Michaelson opinion and Lerner's treatment thereafter until 1979, gave him reason to look forward to early parole. It is unfortunate that his hopes were raised only to be dashed. But we do not think this interval of elevated hopes based upon an official misconstruction of the statute was sufficiently prejudicial to reach the level of a due process violation.

It is a fact of life, unlikely soon to be altered, that new laws are often not challenged and finally interpreted until a number of years go by. Lerner's crimes were of the utmost gravity: he murdered two people in cold blood. The question of when he would be eligible for parole was a novel question, and the various officials and courts cannot be blamed for not being of one mind on the matter. Understandably there were those in Rhode Island who wondered why the ten year rule applicable to a single life sentence should, as first proposed, be applied to two such sentences imposed consecutively. We would be most reluctant to hold that the due process clause of the Constitution took away from the State of Rhode Island the power to consider and apply its laws correctly in this situation. Only in rare circumstances have courts allowed the misconstructions of officials to estop the proper execution of state or federal law, and such cases have involved prejudice and harm beyond frustrated expectations. *See Heckler v. Community Health Services of Crawford County, Inc.,* —— U.S. at ——, 104 S.Ct. at 2224; *Best v. Stetson,* 691 F.2d at 44; *Akbarin v. INS,* 669 F.2d at 842. While Lerner's expectations were raised and then thwarted, he did not suffer other, more tangible prejudice, *cf.* 463 A.2d 1362–63, nor is he worse off than he would have been had the error not been made. Indeed, he received privileges during the time he was believed to be parole-eligible that he would not otherwise have received. *See Heckler v. Community Health Services of Crawford County, Inc.,* —— U.S. at ——, 104 S.Ct. at 2224–25.

We hold that the amended parole statute that took effect in 1970, as construed by the Supreme Court of Rhode Island, is not an ex post facto law and that its application in Lerner's case so as to require that he serve 20 years before being eligible for parole is not a denial of due process.

The judgment of the district court is reversed, and the case is remanded with directions that the petition be dismissed.

*So ordered.*