**Fred E. DeWITT**

v.

**Donald VENTETOULO, Acting Director, Adult Correctional Institution; Anthony Giannini, Justice, Rhode Island Superior Court.**

**Civ. A. No. 90–615B.**

United States District Court,
D. Rhode Island.

Oct. 20, 1992.

David Alan Schecter, Providence, R.I., for petitioner.

Annie Goldberg, Office of the Atty. Gen., Appellate Div., Providence, R.I., for respondent.

## MEMORANDUM AND ORDER

FRANCIS J. BOYLE, Chief Judge.

Petitioner Fred E. DeWitt, a prisoner at the Rhode Island Adult Correctional Institutions (ACI), seeks habeas corpus relief under the authority of 28 U.S.C. § 2254, alleging that he was denied due process when the Superior Court of the State of Rhode Island corrected an illegally imposed suspension of a portion of his life sentence. Petitioner seeks to reinstate the partial suspension of his sentence.

Petitioner was convicted by a Rhode Island Superior Court jury on charges of robbery, arson, and assault with intent to commit murder. On May 8, 1978, he was sentenced to concurrent sentences of life imprisonment for the robbery, ten years for the arson, and twenty years for the assault with intent to commit murder. The convictions were affirmed by the Supreme Court of Rhode Island. *See State v. De-Witt*, 423 A.2d 828 (R.I.1980).

In 1981, Petitioner moved to reduce his sentence for his actions in having voluntarily assisted a correctional officer during an attack by another inmate in prison, and for his having testified against the inmate on behalf of the prosecution. The motion was brought pursuant to Rule 35 of the Rhode Island Rules of Criminal Procedure [1] and within the 120 day time limit for the motion following the affirmance of his conviction. Superior Court Justice Anthony Giannini granted the motion, suspending all but fifteen years of the concurrent sentences and ordering probation for twenty years following release. In the course of the proceeding, Justice Giannini warned Petitioner that if Petitioner violated the terms of probation, he would be returned to prison to serve a life sentence.

In 1983, in an unrelated proceeding, the Supreme Court of Rhode Island construed two Rhode Island statutes and Rule 35 and held that although the Superior Court may reduce a sentence it is without power to suspend a sentence once imprisonment has commenced. *See State v. O'Rourke*, 463 A.2d 1328 (R.I.1983).

Contrary to the ruling in *O'Rourke*, Petitioner was paroled in January, 1987. Upon release, he worked as a machinist, and after saving some money he started a painting business with a partner. They subcontracted to paint several houses. After a period of time, he also began work siding houses part-time. He resumed his relationship with his girlfriend and his family. He also assumed responsibility for paying one-half of the rent at the apartment where he lived with his girlfriend. Eight months after being released, Petitioner was arrested for alleged parole violations stemming from an altercation with his landlord. According to Petitioner's version of the events, after an argument with his drunken landlord, the landlord's wife stabbed Petitioner with a knife. After Petitioner retrieved the knife from the landlord's wife, the landlord "ran into" the knife, and the landlord's wife inexplicably received slash wounds across her face.

Due to the notoriety of his original conviction, Petitioner's arrest received a great deal of publicity. The state moved to correct the illegal suspension of Petitioner's sentence and on September 21, 1987, Justice Giannini vacated the suspension and reimposed the original life sentence, relying on *O'Rourke*. Petitioner was later ac-

---

1. Rule 35, as it was in effect at the time of Petitioner's motion, provided:

   The court may correct an illegal sentence at any time. The court may correct a sentence imposed in an illegal manner and it may reduce any sentence within one hundred twenty (120) days after the sentence is imposed, or within one hundred twenty (120) days after receipt by the court of a mandate of the Supreme Court of Rhode Island issued upon affirmance of the judgment....

quitted of all charges stemming from the 1987 arrest.

■ On January 19, 1988, Petitioner filed a renewed motion to reduce his life sentence under Rule 35. Justice Giannini denied the motion as untimely on February 4, 1988. Petitioner appealed both the reimposition of his life sentence and the summary denial of his renewed Rule 35 motion.[2]

On appeal, Petitioner argued that reimposition of his life sentence was fundamentally unfair and in violation of the ex post facto and due process clauses of the United States Constitution. In particular, Petitioner argued that the six year delay between the illegal suspension of his sentence and its correction resulted in an increased expectation that the suspended sentence was final, which accrued into a constitutional interest in the finality of the suspended sentence. *See Breest v. Helgemoe,* 579 F.2d 95, 101 (1st Cir.1978).

On April 14, 1989, the Supreme Court of Rhode Island rejected Petitioner's constitutional arguments and affirmed the reimposition of his life sentence. *See State v. DeWitt,* 557 A.2d 845 (R.I.1989). The Court reversed the trial court's dismissal of Petitioner's renewed Rule 35 motion and remanded for consideration of that motion.

Justice Giannini denied the Rule 35 motion after a hearing on August 4, 1989. That decision was not appealed.

The present action was filed a year later, on December 11, 1990. On January 9, 1991, this Court ruled, erroneously, that Petitioner had not exhausted his remedies in the state courts. The First Circuit Court of Appeals remanded this action for further proceedings. An evidentiary hearing has been held[3] and the matter is in order for decision.

### The Issues

Petitioner raises a series of interrelated arguments in his petition. First, Petitioner asserts that the six year period between the suspension of a portion of his sentence and its subsequent correction resulted in a legitimate expectation that his reduced sentence was final and unalterable. Petitioner asserts that this expectation was confirmed by his release on parole in January, 1987. As a result, Petitioner argues that the reimposition of his original sentence was fundamentally unfair and a violation of due process. Second, Petitioner argues that the Rhode Island Supreme Court's decision in *O'Rourke* altered existing law and that the reimposition of his original sentence in accord with *O'Rourke* violated the ex post facto clause. Third, Petitioner argues that the correction of his sentence violated the double jeopardy clause. Lastly, Petitioner raises two arguments rooted in state law: that Rhode Island should be estopped from correcting his sentence and that the correction should have been effected by imposing a reduced sentence of fifteen years rather than by reimposing his original life sentence.

### Due Process

■ Petitioner's first argument, that the belated correction of his sentence was

---

**2.** Defendants have moved to dismiss all claims against Rhode Island Superior Court Justice Anthony Giannini on the ground that the claims are barred by the doctrine of judicial immunity. Defendants have also moved to dismiss all claims under 42 U.S.C. § 1983 because § 1983 claims may not be maintained against a state or against agents of the state acting in their official capacity.

Defendants are correct on both counts. A judge is absolutely immune from liability in civil actions arising out of the performance of his judicial functions unless the judge's actions are taken in the "clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978) (quoting *Bradley v. Fisher,* 13 Wall. 335, 351, 20 L.Ed.

646 (1872)). In this case, there is no dispute that Justice Giannini, who presided over the various stages of Petitioner's resentencing, acted within his jurisdiction. Accordingly, all claims against Justice Giannini must be dismissed.

**3.** The state contends that an evidentiary hearing is improper because of a procedural default— the failure to appeal from the denial of Petitioner's second Rule 35 motion. However, as the Court of Appeals for the First Circuit noted in its Order entered March 14, 1991, the Petitioner does not challenge that denial in the present § 2254 petition. Rather, this petition challenges the vacation of the 1981 sentence suspension. There has been no procedural default on this issue.

"fundamentally unfair" and in violation of the due process clause, is based on language in a decision by the First Circuit Court of Appeals in *Breest v. Helgemoe*, 579 F.2d 95 (1st Cir.1978). In *Breest*, the Court of Appeals considered a habeas corpus petition brought by a prisoner who was sentenced to life in prison following a murder conviction. Two weeks after his sentencing, the prisoner was returned to court for correction of his sentence under a statute that provided for enhanced minimum penalties for crimes of a "psycho-sexual" nature. The Court of Appeals held that the resentencing was constitutionally permissible, but noted in passing that:

> [T]he power of a sentencing court to correct even a statutorily invalid sentence must be subject to some temporal limit. When a prisoner first commences to serve his sentence, especially if it involves a long prison term as here, the prospect of release on parole or otherwise may seem but a dimly perceived, largely unreal hope. As the months and years pass, however, the date of that prospect must assume a real and psychologically critical importance.... After a substantial period of time, therefore, it might be fundamentally unfair, and thus violative of due process for a court to alter even an illegal sentence in a way which frustrates a prisoner's expectations by postponing his parole eligibility or release date far beyond that originally set.

*Id.* at 101.

Petitioner argues that the reversal of his illegal sentence suspension, which occurred after a six year delay and after his release on parole, violated the constitution because it exceeded the temporal limit contemplated by the *Breest* court. The Rhode Island Supreme Court was not persuaded by this argument. It dismissed the quoted language in the *Breest* opinion as "pure dicta." There is not complete agreement with this application of *Breest*. Other courts that have cited the *Breest* dictum with approval. *See United States v. Lundien,* 769 F.2d 981, 987 (4th Cir.1985); *United States v. Rico*, 902 F.2d 1065, 1068 (2d Cir.1990); *United States v. Ortega*, 859 F.2d 327, 335 (5th Cir.1988); *United States v. Villano*, 816 F.2d 1448, 1459 (10th Cir.1987) (Logan, J., concurring); *State v. Y.C. Delmondo*, 67 Haw. 531, 533, 696 P.2d 344, 346 (1985); *State v. Acuna*, 103 N.M. 279, 281, 705 P.2d 685, 687 (1985). After careful consideration and in the light of two more recent First Circuit cases discussing *Breest*, this Court is compelled to conclude that Petitioner's due process rights were violated by the reimposition of his original sentence.

On two recent occasions, the First Circuit Court of Appeals has refused to find a due process violation in after the fact state court decisions that construed statutes so as to defer parole eligibility dates for state prisoners. The Court of Appeals based its rulings, however, on the fact that the in custody prisoners had either not completed their prison terms or had been granted parole before the state moved to correct their sentences. Because the prisoners suffered no prejudice beyond frustrated expectations, the Court concluded in each case that the due process clause was not violated. The Court clarified *Breest*, limiting due process violations to cases where, expectations have been realized and correction of sentence results in a "tangible detriment" or "concrete injury." *Littlefield v. Caton*, 856 F.2d 344, 348 (1st Cir.1988).

In *Lerner v. Gill*, 751 F.2d 450 (1st Cir.), *cert. denied*, 472 U.S. 1010, 105 S.Ct. 2709, 86 L.Ed.2d 724 (1985), the Court of Appeals held that a revised interpretation of a parole eligibility statute that doubled defendant's minimum prison term was not fundamentally unfair, despite reliance by defendant on the earlier release date. In *Lerner*, the defendant, Maurice Lerner, received two consecutive life sentences in consequence of a double murder conviction. Lerner was sentenced under a statute that provided that prisoners sentenced to life would become eligible for parole after ten years in prison.

The Attorney General of Rhode Island issued an opinion on August 3, 1976 advising the Department of Corrections that Lerner would be eligible for parole on August 14, 1979, after he had served ten years. Based on this opinion, Lerner was

transferred to a minimum security prison and was granted work release and furlough privileges. In anticipation of his release, Lerner's family moved to Rhode Island and his parents invested in a business to provide him with work in the event he was paroled. Lerner appeared twice before the parole board in March and September of 1979 but was denied parole on each occasion.

In October of 1979, a different Attorney General declared that Lerner had to serve a minimum of twenty years before becoming eligible for parole, ten years for each of his consecutive life sentences. The Supreme Court of Rhode Island agreed. *In re Advisory Opinion to the Governor*, 421 A.2d 535 (R.I.1980). This Court granted a petition for a writ of habeas corpus. The Court of Appeals reversed.

In deciding that the revocation of Lerner's parole eligibility did not violate due process, the Court of Appeals framed the *Breest* principle in terms of a two-part inquiry: (1) whether the changed construction of the statute was unforeseeable and (2) whether Lerner's reliance on a more favorable interpretation was so prejudicial as to be fundamentally unfair. *Id.* 751 F.2d at 458. The Court concluded that the Attorney General's new interpretation of the statute was foreseeable, given the common sense understanding that consecutive sentences imply an intent to subject a prisoner to two punishments.

The Court next addressed the "more difficult question" of whether the nearly three year period during which the parole board and Lerner relied on the erroneous single ten year parole waiting period was "so lengthy or otherwise oppressive as to cause the subsequent construction to violate due process." *Id.* The Court's conclusion that due process was not violated was based on two justifications. First, the Court concluded that "[w]hile Lerner's expectations were raised and then thwarted, he did not suffer other, more tangible prejudice." *Id.* at 459. Second, the Court was influenced by the concern that a rigid application of the due process clause would interfere with Rhode Island's ability to interpret and apply its laws correctly. The Court noted that new laws often are not challenged and interpreted until a number of years go by and expressed a reluctance to erect a constitutional impediment to this process absent a showing of prejudice and harm beyond frustrated expectations.

The second decision to interpret *Breest, Littlefield v. Caton*, 856 F.2d 344 (1st Cir. 1988), echoes the emphasis in *Lerner* on the need to show demonstrable harm in order to make out a due process violation. In *Littlefield*, the First Circuit Court of Appeals held that revocation of illegally awarded "good time credits" accrued over a period of nine years did not violate due process. In reaching this decision, the Court noted that:

[W]e have made clear that misdirection of this sort must 'involve[ ] prejudice and harm beyond frustrated expectations' to be constitutionally redressable. The mere passage of time—even, as here, the passage of many years—does not per se import the existence of such prejudice and harm. Something more—something specific, some concrete injury—must be shown.

*Id.* at 348 (quoting *Lerner*, 751 F.2d at 459).

In applying *Lerner* and *Littlefield* to the facts at hand, the decisive questions are, first, whether the illegality of the suspension of Petitioner's sentence and its subsequent correction was unforeseeable and, second, whether correction of Petitioner's illegally suspended sentence, more than six months after his actual release from prison, constitutes a specific or concrete injury of a magnitude sufficient to offend the due process clause.

The answers are "yes" to both inquiries. Petitioner could not reasonably have anticipated the reinstatement of his life sentence. Furthermore, the injury that Petitioner sustained was precisely the sort of tangible injury that the First Circuit Court of Appeals has indicated will trigger a due process violation.

The correction of Petitioner's sentence was unforeseeable because Petitioner had no reason to know that the suspension of

his sentence was illegal. The Rhode Island Supreme Court decided the issue in an unrelated case two years after his sentence was suspended. As Justice Giannini, who made the erroneous ruling observed, "I don't know how I could have or any other judge could have said we were doing something improper in 1981 and before 1983. The language of Rule 35 is rather plain. The fact that that [sic] rule was enacted in 1972, subsequent to the statute that the Supreme Court dealt with, I think would legitimately permit any one of us who were interpreting the rule to say, well the rule modifies the statute." *State v. DeWitt*, Record of Hearing on September 16 and 21, 1987 at 55. Even after the Supreme Court's decision in *O'Rourke*, Petitioner could not be expected to know of the decision or to have foreseen how it would affect his own case. In short, this is not a case, as in *Lerner*, where a prisoner professed to rely upon an ambiguity in the law construed in his favor by the Attorney General. Here, Petitioner relied on the ruling of an experienced and learned trial judge who had jurisdiction over his case. Thus, the first part of the *Lerner* test is met.

The second part of the test is satisfied because Petitioner suffered concrete injury as a result of his reliance on the validity of his sentence suspension. Petitioner was released from prison because Justice Giannini suspended his sentence.

Release from prison is something more than simple freedom. It is a reintegration into society and entails an acceptance of society's obligations and as well entitlement to its benefits. Among the obligations is the responsibility to care for oneself, to get a job, to find housing. Each of these obligations are accepted in small but significant steps: finding a place to live and assuming the responsibility to pay its cost, renewing a friendship that leads to a business relationship, and successfully seeking out and contracting new business. It is by no means a simple or easy process. Petitioner was involved in this delicate process of reintegration and a new experience of freedom. It was not a mere hope of freedom that was shattered when he was arrested and his original sentence reim-

posed. It was not a future date certain that was denied Petitioner, but an actual present new existence.

The First Circuit Court of Appeals in *Littlefield* and *Lerner* was influenced by the fact that correction of the sentences left the prisoners with dashed hopes but essentially "no worse off than ... had the error not been made." *Lerner*, 751 F.2d at 459; *Littlefield*, 856 F.2d at 349. Certainly, Petitioner is much worse off than had the error not been made. The status quo cannot be returned as if the error had not occurred. Each day out of prison is eons away from prison life. Promises are made. Contracts are signed. Relationships are developed or reestablished. In short, the injury that Petitioner suffered was exactly the sort of real, actual concrete injury or tangible detriment that, in accord with the teachings of *Littlefield* and *Lerner*, amounts to a due process violation.

Beyond the issue of the extent of the petitioner's injury, the *Lerner* Court was also concerned that a grant of broad due process rights to prisoners could interfere with a state's ability to interpret and apply its laws in the normal course of events. *Lerner*, 751 F.2d at 459. The concern does not apply to this case. The Rhode Island Supreme Court made the relevant interpretation of Rule 35 in *State v. O'Rourke*, decided on August 3, 1983. It is likely that at that time, or at a later time before his release in 1987, the State of Rhode Island could have corrected Petitioner's sentence without offending the Constitution. It is not the fact of the sentence correction but the unreasonable delay in effecting it— here, the delay of four years between the date of the *O'Rourke* decision and the subsequent release from custody of the Defendant for eight months that offends due process. *Breest v. Helgemoe*, 579 F.2d 95, 101 (1st Cir.1978). Petitioner's circumstances were not an expectancy, they were a fact.

Petitioner's other arguments need not be addressed. The request for a writ of habeas corpus is granted as to his presently imposed life sentence.

■ There is one further matter to be considered and that is the possibility that the respondent may wish to seek an appeal. Should respondent do so and be successful, a possibility in light of the contrary conclusion of the Rhode Island Supreme Court, petitioner will continue to be subject to a life sentence. It is necessary to resolve the issue of a stay of this court's judgment pending appeal.

■ There is a presumption of release from custody created by the provisions of Rule 23(c) of the Federal Rules of Appellate Procedure. *Hilton v. Braunskill,* 481 U.S. 770, 774, 107 S.Ct. 2113, 2118, 95 L.Ed.2d 724 (1986). The court has "... broad discretion in conditioning a judgment granting habeas relief." *Id.* at 775, 107 S.Ct. at 2118. A number of considerations apply in the determination of whether or not the judgment should be stayed pending appeal: the prospect of success, the possibility of flight, the danger to the public, if any, the State's interest in continuing custody and rehabilitation, and the length of petitioner's sentence unserved. The Supreme Court in *Hilton* stated that the factors which govern the power to issue a stay are:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3)whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 776, 107 S.Ct. at 2119.

Obviously, there is injury to petitioner if he is not immediately released from custody. Against this injury are several countervailing interests which must be considered. The Respondent has a solid reason to argue that it has a strong case on appeal. This case represents an extension of legal doctrine in this circuit, in an area where the Appeals Court has not been especially hospitable to petitioners. *Littlefield v. Caton,* 856 F.2d 344; *Lerner v. Gill,* 751 F.2d 450. These cases suggest that mistaken interpretations of state law and the mere passage of time do not consti-

tute the key which opens the gate to the prison. The Rhode Supreme Court has ruled against petitioner in the same circumstances considered by this court. Petitioner's current plight is a life sentence. He is incarcerated having been convicted by a jury of serious and brutal offenses; and he is a parole violator. If he is released from custody there is a legitimate risk of flight and there is a real potential for harm to the public. Thus, although there is a presumption of entitlement to freedom from the present life sentence there are sound and prudential reasons why release from custody at this time would be premature and contrary to the public interest. On the whole, a stay pending resolution of an appeal, if filed, is appropriate and this court's judgment will be stayed to afford the respondent an opportunity to claim an appeal. Should an appeal be timely claimed, the judgment is further stayed pending the mandate of the Court of Appeals.